Samuel DASH, Chairman, et al.,

v.

Hon. John N. MITCHELL, Attorney General of the United States, et al.

Civ. A. No. 3713-70.

United States District Court,
District of Columbia.

Feb. 7, 1972.

**1294**

Daniel A. Rezneck, Patricia M. Wald, Barbara A. Bowman, Washington, D. C., for plaintiffs.

John H. Suda, James F. Rutherford, Washington, D. C., for defendants.

Before MacKINNON, Circuit Judge, and HART and PARKER, District Judges.

## OPINION

MacKINNON, Circuit Judge.

The present case is an action seeking a declaratory judgment that the so-called preventive detention provisions of the District of Columbia Court Reform and Criminal Procedure Act of 1970[1] are unconstitutional, and a permanent in-junction against their enforcement. The preventive detention provisions, specifically D.C.Code §§ 23–1322 and 23–1323 (Supp. IV, 1971), are asserted to be unconstitutional on their face and void as violative of the Fifth, Sixth, and Eighth Amendments and Articles I and III of the United States Constitution. Because a permanent injunction was sought, a three-judge district court was convened pursuant to 28 U.S.C. § 2282 (1970).

The plaintiffs have filed a motion for summary judgment in their favor, and the defendants have filed motions to dismiss the amended complaint. Since we have concluded that for various reasons relating to standing to sue, ripeness and mootness—reasons which are jurisdictional in nature—the amended complaint must be dismissed, we do not reach the actual merits of the controversy.

### I.

For purposes of resolving certain of the questions of standing to sue which must be decided, a number of the plaintiffs may conveniently be treated as a group. First, there are the individual trustees of the Public Defender Service of the District of Columbia, set forth in paragraph 3 of the amended complaint,[2] suing on behalf of the Defender Service. Second, there are the Washington Urban League, Inc. and the American Civil Liberties Union Fund of the National Capital Area, Inc., set forth in paragraphs 7 and 8 of the amended complaint. All of these plaintiffs will hereafter be referred to together as the "organizational plaintiffs."

The allegations of the amended complaint state that the plaintiffs in general sue as representatives of a class under Fed.R.Civ.P. 23 which "consists of all persons subject to pretrial detention pursuant to the pretrial detention provisions of the District of Columbia Court Reform and Criminal Procedure Act of

---

1. Act of July 29, 1970, Pub.L. No. 91–358, 84 Stat. 473. The preventive detention provisions challenged are codified at D.C. Code §§ 23–1322 and 23–1323 (Supp. IV, 1971). The full text of §§ 23–1322 and 23–1323 are set forth as Appendix A to this opinion.

2. The amended complaint is reprinted in full as Appendix B to this opinion.

1970 . . . ." [3] There are no allegations anywhere in the amended complaint which seek to confer on the organizational plaintiffs any status other than the class representational one just referred to. For reasons to be explained presently, we have concluded that under the mantel of this particular status, the precise allegations of this amended complaint fail to set out any "injury in fact" to the organizational plaintiffs. They therefore have no standing to maintain the present suit.

All of the allegations of the amended complaint which relate to the harm purportedly occasioned by the preventive detention provisions speak directly in terms of harm to those persons —members of the class sought to be represented—who are actually or potentially subject to preventive detention.[4] There simply are no allegations that the organizational plaintiffs *as organizations* are harmed in any way, shape or fashion. *Compare* Protestants and Other Americans United for Separation of Church and State v. Watson, 132 U.S.App.D.C. 329, 407 F.2d 1264 (1968). However many uncertainties there may be as to certain aspects of the federal law of standing, there is no uncertainty as to the requirement that a plaintiff, in order to have standing, must allege that he himself suffers some "injury in fact" by reason of the action sought to be challenged. Davis, Standing: Taxpayers and Others, 35 U.Chi.L.Rev. 601, 607 (1968). Injury in fact is what the Supreme Court has thought imparts that "adversary context" [5] to litigation required by the "case or controversy" clause of Article III of the Constitution. *See* Association of Data Process Service Organizations v. Camp, 397 U.S. 150, 152–154, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 164, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Where, as in the present case, the allegations of a complaint establish a plaintiff in a strictly representational status, and allege injury only to members of the class sought to be represented—*an injury not shared in by the representational plaintiff*—the representational plaintiff plainly has no standing under Article III.

In support of their standing, the organizational plaintiffs rely principally on Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) and Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915). From these cases they would have us conclude that they enjoy a "derivative" standing as a consequence of their "professional relationship" [6] to persons actually or potentially subject to the provisions of the preventive detention statute. Those cases, however, are easily distinguishable from the present case.

In Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), it was held that a physician could assert the constitutional rights of his patients as a defense in a criminal prosecution as an accessory to a viola-

---

3. Amended complaint, paragraph 10.

4. *See* the amended complaint, paragraphs 26 and 27.

5. Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

6. Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 1679, 14 L.Ed.2d 510 (1965). The Trustees of the Public Defender Service allege that "[a]ttorneys employed by the Service regularly represent persons who are subject to pretrial detention under the Act." Amended complaint paragraph 3. However, both the Washington Urban League and the ACLU allege only that their corporate "purposes include protecting the citizens of the District of Columbia against violation of their rights under the United States Constitution." Amended complaint, paragraphs 7 and 8. Whether the latter allegations are sufficient to establish a "professional relationship" may be doubted, but for present purposes we will assume that all the organizational plaintiffs do have such a relationship with persons subject to the provisions of the preventive detention statute.

tion of a Connecticut birth control law. But the imposition of criminal liability upon the physician under an unconstitutional statute certainly constitutes injury in fact to the physician. In Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), a private school was permitted to sue to enjoin the operation of a statute requiring parents to send their children to public schools. The injury to the private school is obvious. Finally, in Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915), an alien employee was held to have standing to attack a statute requiring his employer to fire all but a certain proportion of his alien employees. Again the harm is obvious.

The above three cases were all consistent with the rule "that a person cannot challenge the constitutionality of a statute unless he shows that he himself is injured by its operation." Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953); cf., e. g., Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3d Cir. 1970). In each case, although the statute in question affected a third party most directly, there was also a "consequential detriment" [7] to the actual plaintiff involved. The question as to standing in each case thus dealt not with whether harm in fact was suffered by each plaintiff, but with non-constitutional, policy elements of standing. See, e. g., Flast v. Cohen, 392 U.S. 83, 92–93, 97, 99 n. 20, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Barrows v. Jackson, 346 U.S. 249, 257, 73 S.Ct. 1031, 97

L.Ed. 1586 (1953). In the present case, the amended complaint alleges neither a direct nor a "consequential detriment" to the organizational plaintiffs *as organizations*. In contrast to the above cases, there is thus not even the injury in fact required by Article III.

The organizational plaintiffs rely also on Essex County Welfare Board v. Cohen, 299 F.Supp. 176 (D.N.J.1969) (three-judge court). There the suit was one to challenge a statutory amendment imposing a freeze on federal aid to families with dependent children. The action was brought in part by the Essex County Welfare Board, the local agency with responsibility for administering the aid program in question. In its brief discussion holding that the Board had standing, as to the element of injury in fact the court characterized the Board as having "an interest in the funds it will be required to expend, and in the communities which will be the recipients of those funds." 299 F.Supp. at 179. Without indicating either agreement or disagreement with the New Jersey court's apparent conclusion that this interest was injured, and that the injury was sufficient to meet Article III requirements, the decision is unavailing to the present organizational plaintiffs in any event, because they have not alleged any comparable interest, nor more importantly any injury to such an interest.

## II.

A second standing question is presented as to plaintiffs Dennis A.

---

7. *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 153, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

Cases such as N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) and N.A.A.C.P. v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1448 (1958) are similar. In both *N.A.A.C.P.* cases, it was clear that the organization itself as an organization was suffering injury by reason of official action directed against both the N.A.A.C.P. and against its members. This was enough to confer standing on the N.A.A.C.P., and to permit it to assert the

rights of its members. *E. g., Joint Anti-Fascist, supra*; Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). However, the Court also intimated that the N.A.A.C.P. had standing to assert the rights of its members "because it and its members are in every practical sense identical." N.A.A.C.P. v. Alabama ex rel. Patterson, 357 U.S. 449, 459, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1448 (1958). There is no allegation in this case, nor could there be, that the organizational plaintiffs are "in every practical sense identical" with the members of the class sought to be represented.

McClendon and Natalie R. McClendon. Paragraph 9 of the amended complaint states that they sue as "citizens and taxpayers of the District of Columbia and the United States. On information and belief, their tax payments and those of other taxpayers of the District of Columbia and the United States will be used to defray the costs of pretrial detention of persons pursuant to the Act." In paragraph 10 of the amended complaint, the taxpayer-plaintiffs seek to prosecute their case as a class action "on behalf of all residents of the District of Columbia who pay taxes to the District of Columbia and the United States."

As to the McClendons' status as *federal* taxpayers, their claim to standing perhaps may be disposed of in simple fashion on the basis of Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). In *Flast,* the Court sought to define the standing requirements which federal taxpayers must meet in order to satisfy the requirements of Article III. The first requirement set forth was that

> the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute.

392 U.S. at 102, 88 S.Ct. at 1954. It is plain that the present suit is not an attack "*only* of exercises of congressional power under *the taxing and spending clause of Art. I, § 8* . . ." (emphasis supplied).

The exercise of authority challenged in *Flast* was an exercise of the power to tax and spend for the general welfare, pursuant to Article I, § 8, cl. 1.[8] However, in enacting the District of Columbia Court Reform and Criminal Procedure Act of 1970, Congress acted under the authority of Article I, § 8, cl. 17:

> To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, . . .

*See, e. g.,* District of Columbia v. John R. Thompson Co., 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953); Neild v. District of Columbia, 71 App.D.C. 306, 110 F.2d 246 (1940). Congress was thus not acting *only* pursuant to the taxing and spending clause of Article I, § 8, and therefore under *Flast* the McClendons appear not to have standing to sue as federal taxpayers.

However, as a consequence of the unique status of the District of Columbia, and of the special grant of authority to Congress contained in Article I, § 8, cl. 17, the *Flast* test for federal taxpayer standing may be somewhat misplaced in the context of the present case. Yet, the implications of the principles marked out in *Flast* may still have a more direct application to the McClendons' status.

The first "nexus" test of *Flast* just discussed can be stated somewhat more broadly—that a taxpayer has standing to challenge only exercises of a taxing and spending power. Applying that test to the present case, the question is one of whether the enactment of the preventive detention statute—even though pursuant to Article I, § 8, cl. 17—was nevertheless an exercise of a taxing and spending power, as opposed to being "an essentially regulatory statute." *Flast,* 392 U.S. at 102, 88 S.Ct. 1942.

---

8. U.S.Const., art. I, § 8, cl. 1 reads:
   The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States, but all Duties, Imposts and Excises shall be uniform throughout the United States . . . . .

The answer to this last question cannot be much in doubt. The preventive detention statute on its face resists classification as a "spending program"—certainly the thrust of the statute is not to accomplish the ends sought to be achieved by the application of sums of money. The present case in this respect is in marked contrast to the *Frothingham*[9] case which served as the point of departure for the *Flast* decision. The federal taxpayer in *Frothingham* sought to attack "the Maternity Act of 1921, 42 Stat. 224, which established a federal program of grants to those States which would undertake programs to reduce maternal and infant mortality." *Flast*, 392 U.S. at 91, 88 S. Ct. at 1948. The Maternity Act of 1921 thus involved primarily the expenditure of funds to achieve its purpose, and it was this aspect of the case that permitted the Court in *Flast* to say that "the result in *Frothingham* is consistent with the test of taxpayer standing announced today. The taxpayer in *Frothingham* attacked *a federal spending program* and she, therefore, established the first nexus required." 392 U.S. at 104–105, 88 S.Ct. at 1955 (emphasis supplied).

The District of Columbia preventive detention statute, on the other hand, serves primarily to "regulate" one aspect of the administration of criminal justice within the District of Columbia. Any expenditure of funds to support the administration of the preventive detention provisions is, in any real sense, "incidental" in character. The McClendons have therefore failed to establish the first part of the nexus required by *Flast* in order to support their standing to prosecute the present case as federal taxpayers.

This conclusion applies equally to the McClendons as District of Columbia taxpayers. In *Flast,* the Court impliedly reaffirmed "the limitation imposed upon state-taxpayer standing in federal courts in Doremus v. Board of Education, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952)." 392 U.S. at 102, 88 S.Ct. at 1954. *Doremus* was a state taxpayer suit, prosecuted through the state courts, that came to the Supreme Court as an appeal from the final decision of the Supreme Court of New Jersey. The Court held that it "cannot accept as the basis for review," 342 U.S. at 434, 72 S. Ct. at 397, a state taxpayer's action which did not meet the "case or controversy" requirements of Article III of the Constitution. Of course, those very same requirements must also be met in any case, such as the present one, sought to be brought by local taxpayers as local taxpayers in the federal district courts.

■ This being the case, the McClendons' claim of right to proceed as District of Columbia taxpayers must also be measured against Article III requirements. And in *Flast*, the Court made explicit that its nexus theory was directed to determining whether Article III requirements were satisfied. The conclusion above that the first part of the nexus test was not satisfied, in that the preventive detention provisions were not part of a "spending program," does not change as the focus on the McClendons shifts from their status as federal taxpayers to their status as District of Columbia taxpayers. This shift does not alter in any respect the conclusion that the preventive detention statute is not a taxing and spending program. The McClendons therefore do not have standing in either status.

### III.

A third grouping of plaintiffs can also be conveniently discussed in conjunction with each other, in that those portions of the amended complaint which define their status raise somewhat related issues. These plaintiffs are identified in paragraphs 4–6 of the amended complaint, as follows:

4. Plaintiff James H. Briscoe is a citizen of the District of Columbia, who was ordered detained without bail pending trial pursuant to the pretrial

---

9. Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).

detention provisions of the Act by a judge of the Superior Court on Tuesday, April 13, 1971. He is presently incarcerated pursuant to that order.

5. Plaintiff Roy T. Gaskin is a citizen of the District of Columbia, who was convicted in 1968 of a "crime of violence" as defined by the pretrial detention provisions of the Act. He is subject to pretrial detention if charged with another such offense.

6. Plaintiff Maxie Sullivan is a citizen of the District of Columbia, who is presently charged with a "dangerous crime" as defined by the pretrial detention provisions of the Act.[10]

The defendants in their motions to dismiss have raised the objection that no justiciable case or controversy is presented by the claims of any of these three plaintiffs. This contention will be separately dealt with as it applies to each of the three individual plaintiffs.

A. Gaskin—Subject to preventive detention if charged with another crime of violence.

As to plaintiff Gaskin, the claim of the amended complaint is that for persons such as Gaskin who have previously been convicted of a "crime of violence" [11]

[t]he existence of the pretrial detention provisions further deters and inhibits members of the class represented by plaintiffs from exercising their constitutional rights to freedom of movement and association within the District of Columbia and elsewhere. Arrest, even if later shown to be unjustified, triggers the operation of the pretrial detention provisions and may lead to detention; prior arrests, associations and past conduct unspecified by the statute can be used to justify the detention.[12]

The defendants assert that these allegations fail to set up any real and immediate threat of actual injury, as is necessary to present to the court a "case or controversy" ripe for decision. Reliance is placed on decisions such as Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); United Public Workers v. Mitchell, 330 U.S. 75, 67 S. Ct. 556, 91 L.Ed. 754 (1947); and others. For their part, the plaintiffs argue that the attack is one on the face of the statute, and one which sets up as an immediate, tangible injury a "chilling" effect on First Amendment rights. Plaintiffs rely on decisions that have followed Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), such as Tatum v. Laird, 144 U.S.App.D. C. 72, 444 F.2d 947, cert. granted, 404 U.S. 955, 92 S.Ct. 309, 30 L.Ed.2d 271 (1971); National Student Association v. Hershey, 134 U.S.App.D.C. 56, 412 F.2d 1103 (1969), and others.

---

10. At oral argument on the motions for summary judgment and to dismiss, we were informed that plaintiff Briscoe's detention order had been "vacated" by the District of Columbia Court of Appeals, after the amended complaint had been filed in this case. We were also informed that the "dangerous crime" charge against plaintiff Sullivan had been dropped. The significance of these developments will be discussed at more length, *infra* pp. 1300–1302.

11. D.C.Code § 23–1331(4) (Supp. IV, 1971):

The term "crime of violence" means murder, forcible rape, carnal knowledge of a female under the age of sixteen, taking or attempting to take immoral, improper, or indecent liberties with a child under the age of sixteen years, mayhem, kidnaping, robbery, burglary, voluntary manslaughter, extortion or blackmail accompanied by threats of violence, arson, assault with intent to commit any offense, assault with a dangerous weapon, or an attempt or conspiracy to commit any of the foregoing offenses, as defined by any Act of Congress or any State law, if the offense is punishable by imprisonment for more than one year.

12. Amended complaint, paragraph 27. Under D.C.Code § 23–1322(a)(2) (Supp. IV, 1971) a person arrested for a "crime of violence" may be proceeded against, if he has previously been convicted of a "crime of violence", to determine if he should be preventively detained under the statute.

This area of the law was fully canvassed in National Student Association v. Hershey, *supra*, where the court arrived at the following result:

> [W]e conclude that we should decide the justiciability of suits predicated on alleged chilling effects on a case-by-case basis. In determining whether a given chilling effect is sufficient, it would seem relevant to consider *inter alia*: (1) the severity and scope of the alleged chilling effect on First Amendment freedoms, (2) the likelihood of other opportunities to vindicate such First Amendment rights as may be infringed with reasonable promptness, and (3) the nature of the issues which a full adjudication on the merits must resolve, and the need for factual referents in order properly to define and narrow the issues. *These considerations become relevant, of course, only if the plaintiffs plausibly allege that they are in fact vulnerable to the alleged chilling effect.*

134 U.S.App.D.C. at 68, 412 F.2d at 1115 (emphasis supplied). *See also* National Association of Letter Carriers v. Blount, 305 F.Supp. 546, 549 (D.D.C. 1969) (three-judge court), appeal dismissed, 400 U.S. 801, 91 S.Ct. 7, 27 L. Ed.2d 33 (1970). The emphasized sentence in the quote bears most directly on the allegation of the present amended complaint dealing with plaintiff Gaskin. The substance of those allegations is only that Gaskin "is subject to pretrial detention if charged with another such offense ['crime of violence']."

First, there are no allegations which would impart *form* and substance to the possibility of another arrest for a "crime of violence." Nothing is alleged to indicate that plaintiff Gaskin either desires to or does engage in activity which might be expected to lead to his arrest. Nothing is alleged to suggest that there are peculiar reasons to fear that Gaskin might suffer even a baseless arrest. Going one step further, even assuming an arrest for a "crime of violence," there are no allegations which attempt to suggest a reasonable prospect that prosecutorial discretion will in fact be exercised in an attempt to invoke the preventive detention provisions against plaintiff Gaskin. Finally, there are no allegations that Gaskin is in fact inhibited or deterred in the exercise of his First Amendment rights by fear of running against the possibility of preventive detention. By no stretch of the imagination can it be said that the amended complaint "plausibly allege[s] that [plaintiff Gaskin is] in fact vulnerable to the alleged chilling effect." National Student Association v. Hershey, *supra*. As to plaintiff Gaskin, the amended complaint therefore does not state a justiciable case or controversy.

**B. Sullivan—Charged with a dangerous crime—charge dismissed.**

■ The situation presented as to plaintiff Sullivan is essentially identical to that of plaintiff Gaskin. On the face of the amended complaint, the allegations differ only in that it is alleged that Sullivan *has* been arrested for a "dangerous crime." [13] Without more, the prosecutor could therefore exercise his discretion to institute preventive detention proceedings against Sullivan. [14] As with plaintiff Gaskin, however, there is no allegation, even on "information

---

13. D.C.Code § 23–1331(3) (Supp. IV, 1971):

The term "dangerous crime" means (A) taking or attempting to take property from another by force or threat of force, (B) unlawfully entering or attempting to enter any premises adapted for overnight accommodation of persons or for carrying on business with the intent to commit an offense therein, (C) arson or attempted arson of any premises adaptable for overnight accommodation of persons or for carrying on business, (D) forcible rape, or assault with intent to commit forcible rape, or (E) unlawful sale or distribution of a narcotic or depressant or stimulant drug (as defined by any Act of Congress) if the offense is punishable by imprisonment for more than one year.

14. D.C.Code § 23–1322(a)(1) (Supp. IV, 1971).

and belief," that Sullivan has any reason to fear that preventive detention will be sought in his case. The amended complaint thus does not set forth any imminent threat of injury by reason of actual application of the preventive detention provisions. Even assuming that plaintiff Sullivan could also attempt to rely on a chilling effect theory, as with plaintiff Gaskin there is similarly no allegation that Sullivan is or has been in fact inhibited or deterred in the exercise of First Amendment rights.

Going beyond the face of the amended complaint, there is further reason to conclude that Sullivan's situation is identical to that of plaintiff Gaskin. In the motion to dismiss filed on behalf of the federal defendants, it is represented that the "dangerous crime" charge against Sullivan was "dismissed" on March 24, 1971. Counsel for plaintiffs have not disputed that this is the case. This being so, the posture of Sullivan's claim is identical to Gaskin's, with the exception that Sullivan perhaps would qualify for preventive detention proceedings only *if* arrested for a "dangerous crime," while Gaskin would also qualify *if* arrested for a "crime of violence." [15] Therefore, neither plaintiff "plausibly allege that they are in fact vulnerable to the alleged chilling effect." National Student Association v. Hershey, *supra*.

C. Briscoe—Preventive detention order vacated.

The amended complaint alleges that plaintiff Briscoe "is presently incarcerated" under the pretrial detention provisions which are the subject of this lawsuit.[16] Were this still the case, the defendants concede that Briscoe would have standing and that his claim would present a justiciable case or controversy ripe for adjudication. However, subsequent to the time the amended complaint was filed, the District of Columbia Court of Appeals vacated the order of the Superior Court under which Briscoe was being detained, and remanded for further proceedings under D.C.Code § 23–1322(e) (Supp. IV, 1971).[17] As a result of the proceedings on remand, a parole violation warrant was executed against Briscoe, and he is currently being detained pending trial as a parole violator.

The defendants assert that Briscoe's right to proceed with the present action is now controlled by Powell v. McCormick, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). There the Court noted that "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." 395 U.S. at 496, 89 S. Ct. at 1951. Since Briscoe is no longer being detained under the preventive detention provisions sought to be challenged, it is argued that he does "lack a legally cognizable interest in the outcome." Plaintiffs have developed two theories which they claim compel a conclusion that the case is *not* moot as to Briscoe.

First, it is suggested that Briscoe retains a "legally cognizable interest in the outcome" as a result of "collateral consequences" which attach to the original determination of the Superior Court that Briscoe should be preventively detained. Carafas v. Lavallee, 391 U.S.

---

15. *Compare* D.C.Code § 23–1322(a)(1) (Supp. IV, 1971) *with* D.C.Code § 23–1322(a)(3) (Supp. IV, 1971).

16. Amended complaint, paragraph 4.

17. The judicial officer may detain for a period not to exceed five calendar days a person who comes before him for a bail determination charged with any offense, if it appears that such person is presently on probation, parole, or mandatory release pending completion of sentence for any offense under State or Federal law and that such person may flee or pose a danger to any other person or the community if released. During the five-day period, the United States attorney or the Corporation Counsel for the District of Columbia shall notify the appropriate State or Federal probation or parole officials. If such officials fail or decline to take the person into custody during such period, the person shall be treated in accordance with section 23–1321. . . .

234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Hudson v. Hardy, 137 U.S. App.D.C. 366, 424 F.2d 854 (1970); Justin v. Jacobs, 145 U.S.App.D.C. 355, 449 F.2d 1017 (1971) and cases cited, 145 U.S.App.D.C. at 355 n. 10, 449 F.2d at 1019 n. 10. Without attempting to determine what collateral consequences may attach to a preventive detention order which has been vacated by the court, it is apparent that the principle of the above cases has no application to the present case.

■ The central point of the cases dealing with collateral consequences is that a case is not moot where the relief sought will operate to avoid "adverse effects of the event in issue." Justin v. Jacobs, *supra*, 145 U.S.App.D.C. at 355, 449 F.2d at 1019. As the present case stands, it is plain that the relief sought would not eliminate any adverse effects not already obviated by the action of the District of Columbia Court of Appeals in vacating the preventive detention order against Briscoe. At the outset, when the preventive detention order was vacated, the underlying determination which gives rise to all consequences, collateral or otherwise, was erased as a matter of official record. Of course, the fact that the Superior Court, rightly or wrongly, once decided that preventive detention was proper in Briscoe's case remains, but nothing anyone can do can erase that fact. The result is that the only court action which could be of possible significance in avoiding collateral consequences would be a determination that the original detention order was not justified *on the merits*. But relief of that kind is neither sought nor available from this court. All that is asked in the present case is a declaration that the preventive detention provisions are unconstitutional, and an injunction against their enforcement. As far as Briscoe's case is concerned, neither relief would

have any effect over and above that already accomplished by the action of the District of Columbia Court of Appeals. Therefore, the collateral consequences doctrine does not avoid the mootness problem.

■ A second theory put forth rests on the short term nature of preventive detention orders.[18] Plaintiffs assert that appellate review of detention orders, at least if limited to individual cases of detention, will always be frustrated on mootness grounds. What is foreseen is a situation involving "short term orders, capable of repetition, yet evading review." Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Under these circumstances, a case which is otherwise moot may not always be so. Sibron v. New York, 392 U.S. 40, 52–53, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

Although the force of this argument must be recognized, we are not yet convinced that the present situation is one which calls for the application of *Sibron*. First, it is not certain that a prompt and final determination of the constitutionality of the preventive detention provisions is impossible outside the context *of review of individual cases* of detention. We have found numerous deficiencies in the amended complaint in this case which we think preclude a declaratory judgment and other relief on the merits, but that does not necessarily mean that no declaratory judgment action, by any plaintiff, on any set of allegations, will ever succeed in obtaining a ruling on the merits. Second, even if judicial consideration of the merits can only be had in individual cases such as Briscoe's, and this may well be required in order to avoid passing on speculative contingencies, the collateral consequences doctrine may yet come into play in a case where a preventive detention order is not vacated on immediate ap-

---

18. Under D.C.Code § 23–1322(d)(2)(A) (Supp. IV, 1971), a person preventively detained may no longer be so detained upon the expiration of sixty calendar days, unless the trial is in progress or the trial has been delayed at the request of the person other than by the filing of timely motions (excluding motions for continuances) . . . .

peal. In such a case, the question will be presented as to whether adverse consequences do survive the termination of actual detention, and whether those consequences are sufficient for a conclusion that the case is not moot. In the event that it is concluded that there are no significant collateral consequences which attach to a preventive detention order, perhaps then will be the time to decide that further appellate review is nonetheless required under *Sibron*. We think it is too early to say, however, whether that is the case.

Since we conclude that all of the plaintiffs in this case, for one reason or another, fail to present a claim which can be reached on the merits, the amended complaint is dismissed.

So ordered.

## APPENDIX A

§ 23–1322. Detention prior to trial

(a) Subject to the provisions of this section, a judicial officer may order pretrial detention of—

(1) a person charged with a dangerous crime, as defined in section 23–1331(3), if the Government certifies by motion that based on such person's pattern of behavior consisting of his past and present conduct, and on the other factors set out in section 23–1321(b), there is no condition or combination of conditions which will reasonably assure the safety of the community;

(2) a person charged with a crime of violence, as defined in section 23–1331(4), if (i) the person has been convicted of a crime of violence within the ten-year period immediately preceding the alleged crime of violence for which he is presently charged; or (ii) the crime of violence was allegedly committed while the person was, with respect to another crime of violence, on bail or other release or on probation, parole, or mandatory release pending completion of a sentence; or

(3) a person charged with any offense if such person, for the purpose of obstructing or attempting to obstruct justice, threatens, injures, intimidates, or attempts to threaten, injure, or intimidate any prospective witness or juror.

(b) No person described in subsection (a) of this section shall be ordered detained unless the judicial officer—

(1) holds a pretrial detention hearing in accordance with the provisions of subsection (c) of this section;

(2) finds—

(A) that there is clear and convincing evidence that the person is a person described in paragraph (1), (2), or (3) of subsection (a) of this section;

(B) that—

(i) in the case of a person described only in paragraph (1) of subsection (a), based on such person's pattern of behavior consisting of his past and present conduct, and on the other factors set out in section 23–1321(b), or

(ii) in the case of a person described in paragraph (2) or (3) of this subsection, based on the factors set out in section 23–1321(b), there is no condition or combination of conditions of release which will reasonably assure the safety of any other person or the community; and

(C) that, except with respect to a person described in paragraph (3) of subsection (a) of this section, on the basis of information presented by proffer or otherwise to the judicial officer there is a substantial probability that the person committed the offense for which he is present before the judicial officer; and

(3) issues an order of detention accompanied by written findings of fact and the reasons for its entry.

(c) The following procedures shall apply to pretrial detention hearings held pursuant to this section:

(1) Whenever the person is before a judicial officer, the hearing may be initiated on oral motion of the United States attorney.

(2) Whenever the person has been released pursuant to section 23–1321 and it subsequently appears that such person may be subject to pretrial detention, the United States attorney may initiate a pretrial detention hearing by ex parte written motion. Upon such motion the judicial officer may issue a warrant for the arrest of the person and if such person is outside the District of Columbia, he shall be brought before a judicial officer in the district where he is arrested and shall then be transferred to the District of Columbia for proceedings in accordance with the section.

(3) The pretrial detention hearing shall be held immediately upon the person being brought before the judicial officer for such hearing unless the person or the United States attorney moves for a continuance. A continuance granted on motion of the person shall not exceed five calendar days, unless there are extenuating circumstances. A continuance on motion of the United States attorney shall be granted upon good cause shown and shall not exceed three calendar days. The person may be detained pending the hearing.

(4) The person shall be entitled to representation by counsel and shall be entitled to present information by proffer or otherwise, to testify, and to present witnesses in his own behalf.

(5) Information stated in, or offered in connection with, any order entered pursuant to this section need not conform to the rules pertaining to the admissibility of evidence in a court of law.

(6) Testimony of the person given during the hearing shall not be admissible on the issue of guilt in any other judicial proceeding, but such testimony shall be admissible in proceedings under sections 23–1327, 23–1323, and 23–1329, in perjury proceedings, and for the purposes of impeachment in any subsequent proceedings.

(7) Appeals from orders of detention may be taken pursuant to section 23–1324.

(d) The following shall be applicable to persons detained pursuant to this section:

(1) The case of such person shall be placed on an expedited calendar and, consistent with the sound administration of justice, his trial shall be given priority.

(2) Such person shall be treated in accordance with section 23–1321—

(A) upon the expiration of sixty calendar days, unless the trial is in progress or the trial has been delayed at the request of the person other than by the filing of timely motions (excluding motions for continuances); or

(B) whenever a judicial officer finds that a subsequent event has eliminated the basis for such detention.

(3) The person shall be deemed detained pursuant to section 23–1325 if he is convicted.

(e) The judicial officer may detain for a period not to exceed five calendar days a person who comes before him for a bail determination charged with any offense, if it appears that such person is presently on probation, parole, or mandatory release pending completion of sentence for any offense under State or Federal law and that such person may flee or pose a danger to any other person or the community if released. During the five-day period, the United States attorney or the Corporation Counsel for the District of Columbia shall notify the appropriate State or Federal probation or parole officials. If such officials fail or decline to take the person into custody during such period, the person shall be treated in accordance

with section 23–1321, unless he is subject to detention under this section. If the person is subsequently convicted of the offense charged, he shall receive credit toward service of sentence for the time he was detained pursuant to this subsection. (July 29, 1970, Pub.L. 91–358, § 210(a), title II, 84 Stat. 644.)

### EFFECTIVE DATE

See note preceding section 23–101.

### SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 23–1323, 23–1324, 23–1329.

### § 23–1323. Detention of addict

(a) Whenever it appears that a person charged with a crime of violence, as defined in section 23–1331(4), may be an addict, as defined in section 23–1331(5), the judicial officer may, upon motion of the United States attorney, order such person detained in custody for a period not to exceed three calendar days, under medical supervision, to determine whether the person is an addict.

(b) Upon or before the expiration of three calendar days, the person shall be brought before a judicial officer and the results of the determination shall be presented to such judicial officer. The judicial officer thereupon (1) shall treat the person in accordance with section 23–1321, or (2) upon motion of the United States attorney, may (A) hold a hearing pursuant to section 23–1322, or (B) hold a hearing pursuant to subsection (c) of this section.

(c) A person who is an addict may be ordered detained in custody under medical supervision if the judicial officer—

(1) holds a pretrial detention hearing in accordance with subsection (c) of section 23–1322;

(2) finds that—

(A) there is clear and convincing evidence that the person is an addict;

(B) based on the factors set out in subsection (b) of section 23–1321, there is no condition or combination of conditions of release which will reasonably assure the safety of any other person or the community; and

(C) on the basis of information presented to the judicial officer by proffer or otherwise, there is a substantial probability that the person committed the offense for which he is present before the judicial officer; and

(3) issues an order of detention accompanied by written findings of fact and the reasons for its entry.

(d) The provisions of subsection (d) of section 23–1322 shall apply to this section. (July 29, 1970, Pub.L. 91–358, § 210(a), title II, 84 Stat. 646.)

### APPENDIX B
#### April 16, 1971

### AMENDED COMPLAINT FOR PERMANENT INJUNCTION, DECLARATORY JUDGMENT, AND OTHER RELIEF

Plaintiffs complain against the defendants as follows:

### I

### STATEMENT AS TO JURISDICTION

1. This is an action for a permanent injunction prohibiting the defendants, who are the Attorney General of the United States, the United States Attorney for the District of Columbia, the Chief Judge of the Superior Court of the District of Columbia, and the United States Magistrates for the District of Columbia, from enforcing and acting pursuant to the provisions for pretrial detention of defendants in criminal cases contained in the District of Columbia Court Reform and Criminal Procedure Act of 1970, Title 23, D.C.Code §§ 1322 and 1323. This action also seeks a declaratory judgment that these provisions of the Act are unconstitutional on their face and void as violations of the Fifth, Sixth, and Eighth Amendments and Articles I and III of the United States Constitution.

2. This action arises under the Constitution of the United States. The jurisdiction of this Court is based on 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 11 D.C.Code § 521. The amount in controversy in this case exceeds $10,000, exclusive of interest and costs.

## II

### THE PARTIES

3. Plaintiffs Samuel Dash, Shellie F. Bowers, Paul R. Connolly, Paul E. Miller, Andrew F. Oehmann, Sidney S. Sachs, and Fred M. Vinson, Jr., are the Trustees of the Public Defender Service for the District of Columbia. The Service has a Congressional mandate to protect the rights and interests of indigent criminal defendants in the District of Columbia. The Service is authorized by statute to provide legal representation to persons in the District of Columbia who are charged with an offense punishable by imprisonment for a term of six months or more and are financially unable to obtain adequate representation. Attorneys employed by the Service regularly represent persons who are subject to pretrial detention under the Act. The Offender Rehabilitation Division of the Service aids in implementing conditions of release and makes rehabilitation plans for persons released prior to trial.

4. Plaintiff James H. Briscoe is a citizen of the District of Columbia, who was ordered detained without bail pending trial pursuant to the pretrial detention provisions of the Act by a judge of the Superior Court on Tuesday, April 13, 1971. He is presently incarcerated pursuant to that order.

5. Plaintiff Roy T. Gaskin is a citizen of the District of Columbia, who was convicted in 1968 of a "crime of violence" as defined by the pretrial detention provisions of the Act. He is subject to pretrial detention if charged with another such offense.

6. Plaintiff Maxie Sullivan is a citizen of the District of Columbia, who is presently charged with a "dangerous crime" as defined by the pretrial detention provisions of the Act.

7. Plaintiff The Washington Urban League, Inc., is a nonprofit corporation incorporated under the laws of the District of Columbia. Its purposes include protecting the citizens of the District of Columbia against violation of their rights under the United States Constitution.

8. Plaintiff American Civil Liberties Union Fund of the National Capital Area, Inc., is a nonprofit corporation incorporated under the laws of the District of Columbia. Its purposes include protecting the citizens of the District of Columbia against violation of their rights under the United States Constitution.

9. Plaintiffs Dennis A. McClendon and Natalie R. McClendon are citizens and taxpayers of the District of Columbia and the United States. On information and belief, their tax payments and those of other taxpayers of the District of Columbia and the United States will be used to defray the costs of pretrial detention of persons pursuant to the Act.

10. Plaintiffs are representatives of a class as defined by Rule 23 of the Federal Rules of Civil Procedure and bring this action on behalf of the entire class. The class is so numerous that joinder of all members is impracticable. There are questions of law and fact common to the class. The claims of plaintiffs are typical of the claims of the class. Plaintiffs will fairly and adequately protect the interests of the class. The class consists of all persons subject to pretrial detention pursuant to the pretrial detention provisions of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Title 23, D.C.Code §§ 1322 and 1323. Plaintiffs Dennis A. and Natalie R. McClendon also bring this action on behalf of all residents of the District of Columbia who pay taxes to the District of Columbia and the United States.

11. Defendant John N. Mitchell is the Attorney General of the United States. His official residence is the District of Columbia. He is sued in his official capacity in this case.

12. Defendant Thomas A. Flannery is the United States Attorney for the District of Columbia. He is sued in his official capacity in this case.

13. Defendant Harold H. Greene is Chief Judge of the Superior Court of the District of Columbia. Judges of this Court are empowered to enforce and act pursuant to 23 D.C.Code §§ 1322 and 1323 by imposing pretrial detention on persons charged with crimes in the District of Columbia. He is sued in his official capacity in this case and as representative of the Judges of the Court.

14. Defendants Arthur L. Burnett and Lawrence S. Margolis are the United States Magistrates for the District of Columbia. They are empowered to enforce and act pursuant to 23 D.C.Code §§ 1322 and 1323 by imposing pretrial detention on persons charged with crimes in the District of Columbia. They are sued in their official capacities in this case.

### III

### STATEMENT OF THE CLAIM

15. On July 29, 1970, the President signed into law Public Law 91–358, known as the District of Columbia Court Reform and Criminal Procedure Act of 1970. Chapter 13, Subchapter II, of that Act repealed the provisions of the Federal Bail Reform Act of 1966, 18 U.S.C. §§ 3146–52, for the District of Columbia. It substituted new provisions for release and pretrial detention of persons charged with crimes in the District of Columbia. These provisions took effect February 1, 1971.

16. Title 23, Sections 1322 and 1323, authorize and empower judicial officers in the District of Columbia, including Judges of the Superior Court and United States Magistrates, to impose pretrial detention on certain classes of persons charged with crimes in the District of Columbia, including, *inter alia*:

(1) persons charged with a so-called "dangerous crime," that is:

"(A) taking or attempting to take property from another by force or threat of force, (B) unlawfully entering or attempting to enter any premises adapted for overnight accommodation of persons or for carrying on business with the intent to commit an offense therein, (C) arson or attempted arson of any premises adaptable for overnight accommodation of persons or for carrying on business, (D) forcible rape, or assault with intent to commit forcible rape, or (E) unlawful sale or distribution of a narcotic or depressant or stimulant drug (as defined by any Act of Congress) if the offense is punishable by imprisonment for more than one year."

if the Government:

"[C]ertifies by motion that based on such person's pattern of behavior consisting of his past and present conduct, and on the other factors set out in section 23–1321(b), there is no condition or combination of conditions which will reasonably assure the safety of the community;"

(2) persons charged with a so-called "crime of violence," that is:

"[M]urder, forcible rape, carnal knowledge of a female under the age of sixteen, taking or attempting to take immoral, improper, or indecent liberties with a child under the age of sixteen years, mayhem, kidnaping, robbery, burglary, voluntary manslaughter, extortion or blackmail accompanied by threats of violence, arson, assault with a dangerous weapon, or an attempt or conspiracy to commit any of the foregoing offenses, as defined by any Act of Congress or any State law, if the of-

fense is punishable by imprisonment for more than one year." if:

"(i) the person has been convicted of a crime of violence within the ten-year period immediately preceding the alleged crime of violence for which he is presently charged; or (ii) the crime of violence was allegedly committed while the person was, with respect to another crime of violence, on bail or other release or on probation, parole, or mandatory release pending completion of a sentence;"

(3) "Addicts" charged with a so-called "crime of violence" as enumerated above.

An addict is defined as:

"any individual who habitually uses any narcotic drug as defined by section 4731 of the Internal Revenue Code of 1954 so as to endanger the public morals, health, safety, or welfare."

17. Pretrial detention is authorized after a pretrial detention hearing on the basis of written findings by the judicial officer that:

(1) there is "clear and convincing evidence" that the person charged is within one of the classes defined above;

(2) "there is no condition or combination of conditions of release which will reasonably assure the safety of any other person or the community;" and

(3) "on the basis of information presented by proffer or otherwise to the judicial officer there is a substantial probability that the person committed the offense for which he is present before the judicial officer."

18. Sections 1322 and 1323 on their face flagrantly and patently violate the Constitution of the United States and deprive plaintiffs of rights guaranteed to them and the members of the class they represent by the Constitution.

19. They deny the right to bail guaranteed by the Eighth Amendment.

20. They deprive persons of life, liberty, and property without due process of law in violation of the Fifth Amendment, in that:

(a) they violate the presumption of innocence guaranteed to all persons accused of crime;

(b) they inflict punishment without a judicial trial and without affording the accused the procedural safeguards of persons accused of crime which are guaranteed by the Fifth and Sixth Amendments, including the right to confront and cross-examine accusers; the standard of proof beyond a reasonable doubt; and the privilege against self-incrimination.

(c) they are void for vagueness and overbreadth;

(d) they are arbitrary, unreasonable, and capricious in punishing persons for predicted offenses which have not been committed;

(e) they are arbitrary, unreasonable, and capricious in the classes of persons subjected to pretrial detention;

(f) they deny the citizens of the District of Columbia the equal protection of the laws by subjecting them to a system of pretrial detention not applicable to persons charged with crime in any other Federal court in the United States.

21. They deny the accused the effective assistance of counsel in defending against the offense with which he is charged, in violation of the Sixth Amendment.

22. They impose punishment for the status of being an addict and of having a criminal record, in violation of the prohibition of cruel and unusual punishment in the Eighth Amendment.

23. They violate Article I, Section IX, of the Constitution in that:

(a) they constitute a bill of attainder imposing punishment on legislatively defined classes of persons;

(b) they constitute an *ex post facto* law imposing additional punishment for acts committed before the passage of the act;

(c) they constitute a suspension of the privilege of the writ of habeas corpus.

24. They violate Article III of the Constitution by authorizing punishment in the form of pretrial detention to be imposed by Judges of the Superior Court and United States Magistrates who are not judges within the meaning of Article III.

25. Defendants have acted to enforce these provisions and further enforcement is threatened and imminent. Representatives of the Office of the United States Attorney for the District of Columbia have made several motions for pretrial detention of citizens of the District of Columbia before the Superior Court and the United States Magistrate. On April 13, 1971, a pretrial detention order was granted by a judge of the Superior Court in the case of plaintiff James H. Briscoe. Extensive newspaper, radio, and television publicity has been given to these cases, including publication of names, addresses, criminal records, alleged confessions, and pending charges of persons sought to be detained. Representatives of the Office of the United States Attorney have stated that they intend to continue to enforce these provisions. Unless enforcement, operation, and execution of the Act are enjoined, members of the class represented by plaintiffs will be subjected to pretrial detention pursuant to these provisions.

26. Pretrial detention inflicts irreparable injury on persons detained by subjecting them to incarceration without any compensation, even if the detention is subsequently held to have been wrongfully imposed. Pretrial detention also irreparably impairs the opportunity to prepare a defense to the charge and the right to receive the effective assistance of counsel. It also irreparably impairs the right to a fair trial on the offense with which the detained person is charged, by reason of the publicity accompanying the effort to detain him.

27. The existence of the pretrial detention provisions further deters and inhibits members of the class represented by plaintiffs from exercising their constitutional rights to freedom of movement and association within the District of Columbia and elsewhere. Arrest, even if later shown to be unjustified, triggers the operation of the pretrial detention provisions and may lead to detention; prior arrests, associations, and past conduct unspecified by the statute can be used to justify the detention.

28. Plaintiffs and the members of the class they represent have no adequate remedy at law to prevent imminent and irreparable injury, loss, and damage.

Wherefore plaintiffs pray:

(A) That this Court declare and adjudge that the pretrial detention provisions of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Sections 1322 and 1323 of Title 23 of the D.C.Code, are unconstitutional on their face and void and that the defendants cannot lawfully enforce them and act pursuant to them;

(B) That this Court permanently enjoin the defendants from enforcing and acting pursuant to Sections 1322 and 1323 of Title 23, D.C.Code.

(C) That this Court award the plaintiffs and the members of the class they represent such other and further relief as may be just and equitable under the circumstances.

PARKER, District Judge (concurring in part and dissenting in part):

I concur in the dismissal of the complaint as to the taxpayer plaintiffs Dennis A. McClendon and Natalie R. McClendon, the *organizational plaintiffs*

and their named officers and trustees,[1] and the individual plaintiffs Roy T. Gaskin and Maxie Sullivan. However, I am unable to concur in the dismissal of the claim of James H. Briscoe and the class he represents.[2]

Briscoe was ordered preventively detained, but the order was vacated by the District of Columbia Court of Appeals and remanded for further proceedings under 23 D.C.Code § 1322(e) (Supp. IV, 1971). If applicable, that section allows the arrestee to be detained for five days while revocation of probation or parole is considered by the appropriate authorities. Following the remand Briscoe was detained pending trial as a parole violator.

I believe this is precisely the type of situation contemplated by the provision for review of "short term orders, capable of repetition, yet evading review." Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

The majority, while recognizing the force of this argument, refuse to apply it because "it is not certain that a prompt and final determination of the constitutionality of the preventive detention provisions is impossible outside the context of review of individual cases," and because even in individual cases "the collateral consequences doctrine may yet come into play in a case where a preventive detention order is not vacated on immediate appeal."

Such a conclusion is not supported by the "short term order" review doctrine, and is particularly inappropriate to the unique problems presented by the preventive detention statute.

Examination of the development of the "short term order" review concept indicates that its primary rationale has been fairness and practicality in dealing with recurring issues which tend to escape review because of their short time span. Each case must be considered on its own facts. The doctrine was first enunciated by the Supreme Court, without supporting authority, in United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L. Ed. 100 (1897). The Court there held that the post-judgment voluntary dissolution of an association which had been created for purposes alleged to be in violation of the Sherman Anti-Trust Act did not bar appellate review where the agreement underlying the association had not been repudiated by the signatories. If review were not granted new associations could be subsequently formed pursuant to the terms of similar or even identical agreements, and final resolution of the alleged illegality would be avoided by the mere expedient of repetitive dissolutions and reformations of associations. *Id.*, 166 U.S. at 307–310, 17 S.Ct. 540.[3]

---

1. The expertise of the organizational plaintiffs may be valuable and acceptable in the context of amici curiae.

2. The majority correctly follow precedent in their refusal to apply the collateral consequences doctrine where, as here, all adverse *legal* consequences have been obviated. *But see* Parker v. Ellis, 362 U.S. 574, 592–594, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960) (Warren, C. J., dissenting, joined by three other Justices). *Parker* was subsequently overruled in Carafas v. La Valle, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), without the necessity of reaching the issue posed by the former Chief Justice.

3. In *Southern Pacific Terminal, supra,* the Court relied in part on *Trans-Missouri* and refused to dismiss as moot an appeal from an order of the Interstate Commerce Commission to cease and desist from granting an alleged undue preference, although the two-year order—which had been extended for an additional month and a half—expired before the Supreme Court's decision. The Court found a denial of a private party's right to review inconsistent with the review allowed the Government in *Trans-Missouri.*

*Southern Pacific Terminal* also relied strongly on Boise City Irr. & Land Co. v. Clark et al., 131 F. 415 (9th Cir. 1904), which affirmed a refusal to dismiss as moot a challenge to a decree affirming an order of a municipal body establishing maximum rates to be charged by the peti-

Significantly, the Court in Panama Refining Co. et al. v. Ryan et al., 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), held not mooted a challenge to regulations issued by the Secretary of the Interior although the regulations had been amended after the suit was filed. Mr. Chief Justice Hughes, speaking for the Court and citing *Southern Pacific Terminal, supra,* noted that the amended regulations *"continue substantially the earlier requirements,* and expand them," and *"present the same constitutional questions, . . ."* 293 U.S. at 413, 414, 55 S.Ct. at 245. (Emphasis added.) [4]

However, in Hall et ux. v. Beals et al., 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969), the Court vacated the judgment of a three-judge district court with directions to dismiss as moot a class action challenging a state six-month statutory voter residency requirement. After the Supreme Court had noted probable jurisdiction the statute was amended to require only two months residency. Thus the high Court concluded that even though the opportunities for review of the statute were restricted in time, there was no longer a live controversy as to the named plaintiffs primarily because they would have been eligible under the statute as amended.

But even under the more restrictive *Beals* precedent Briscoe presents a live controversy since, unlike the plaintiffs in *Beals,* he remains subject to the preventive detention statute for at least ten years after conviction for a "crime of violence."

Most importantly, the nature of this case cries out for prompt judicial review. It appears meaningless to specu-late that case-by-case review of the serious constitutional doubts surrounding incarceration pursuant to the preventive detention statute *may* be possible. Such review differs fundamentally from review of the constitutionality of a statute under which an individual may be incarcerated for conduct deemed criminal by the statute. In the latter instance the substantiality of the constitutional challenges is a factor to be considered in the judicial determination whether to release the accused pending appeal. 23 D.C.Code § 1325(c)(2) (Supp. IV, 1971). Such a procedure is, of course, mutually exclusive with the sole purpose of the preventive detention statute—*immediate* incarceration. Surely, resolution of such inherently inadequate legal remedies is at the very heart of "short term order" review.

---

tioner for water furnished to consumers for a certain year which had already expired. The Circuit Court justified its action "partly because the rate, once fixed, continues in force until changed as provided by law, *and partly because of the necessity or propriety of deciding some question of law presented which might serve to guide* the municipal body when again called upon to act in the matter." *Id.,* 131 F. at 419 (Emphasis added).

4. More recently, the Supreme Court, in Moore et al. v. Ogilvie et al., 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), allowed review of a challenge by independent candidates for presidential electors in 1968 to the constitutionality of a state statute establishing standards for nominating petitioners for such candidates, even though the election had already been held.