UNITED STATES of America ex rel. Edilberto CHAPARRO, Joseph F. Cole, Andrew C. Pulley, Eugene J. Rudder, Curtis E. Mays, Delmar Thomas, Dominick Duddie, Thomas Woodfin, Petitioners-Appellants,

v.

Stanley R. RESOR, Secretary of the Army, Brigadier General James B. Hollingsworth, Commanding General of Fort Jackson, South Carolina, Respondents-Appellees.

No. 13494.

United States Court of Appeals
Fourth Circuit.

Argued May 7, 1969.

Decided May 19, 1969.

Dorian Bowman, New York City (Thomas Broadwater, Columbia, S. C., and David Rein, Washington, D. C., and Rabinowitz, Boudin & Standard, New York City, on brief) for appellants.

James H. Fowles, Jr., Asst. U. S. Atty. (Klyde Robinson, U. S. Atty., and Wistar D. Stuckey, Asst. U. S. Atty., and Arnold

I. Melnick, Lieutenant Colonel, JAGC, on brief) for appellees.

Before BRYAN, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

A group of members of the armed forces stationed at Fort Jackson, South Carolina, some of whom were confined to the stockade and some of whom were confined to their barracks while awaiting courts-martial on various charges under Articles 89, 92 and 116 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C.A. §§ 889, 892, 916, sought a writ of habeas corpus to effect their pretrial release. Named as respondents were the Commanding General of Fort Jackson, South Carolina, and the Secretary of the Army of the United States. The district judge denied them relief, confining his decision to the holding that petitioners had failed to exhaust all remedies within the hierarchy of the military establishment in that they had not sought habeas corpus relief from the Court of Military Appeals.

An immediate appeal to us was taken. We advanced the appeal; but, in the meantime, petitioners sought habeas from the Court of Military Appeals; and, on May 5, 1969, two days before argument scheduled before us, it entered an order denying the writ, with one judge dissenting on the ground that he would have required the Secretary and the Commanding General to show cause why the relief sought should not be granted.[1] In argument, we are also advised that charges have been dropped against petitioners Mays and Duddie, and that petitioner Chaparro is being discharged, so that as to them the case is moot.

The essential ground urged upon the district court for issuance of the writ was that petitioners were unlawfully restrained of their liberty beyond the usual restraint which attaches to one who is a member of the military. The conclusion was premised upon the claim that, properly construed, Articles 10 and 13 of the UCMJ authorize pretrial confinement only where reasonably necessary to secure presence at trial, that, in the case of petitioners, confinement to the stockade or to their barracks is not necessary to secure presence at trial, and that, in fact, since the charges against them stem from their purported exercise of their First Amendment rights to speak, to assemble and to associate in demonstration of their opposition to the war in Vietnam, their pretrial confinement is for the purpose of punishing them for having exercised their constitutional rights and not to secure their presence at trial.

Although we express no view on the necessity of exhaustion by application for a writ of habeas corpus to the Court of Military Appeals, in view of the fact that by the time the appeal came on for argument before us, exhaustion had clearly occurred, petitioners contend that we should decide the case by directing the district court to issue the writ forthwith. Petitioners represent to us that if we remand the case to the district judge they intend to present no additional evidence and will rely instead solely on the allegations contained in the petition for the writ and respondents' answer, which is supported by a large number of affidavits of what transpired. These, they assert, provide a sufficient evidentiary basis from which we may determine the facts to be as they contend.

Explicit in petitioners' contention is that Articles 10 and 13 UCMJ limit pretrial confinement solely to insuring presence at trial. We do not agree that these

---

1. The majority filed no opinion and assigned no reason for its conclusion in the order denying the writ. Thus, the views of that court as to the issue of whether it had jurisdiction to issue the writ in an appropriate case—an aspect of the broader issue debated in the briefs before us as to whether petitioners had an available remedy in that court, and whether they should be required to exhaust it—cannot be determined. Since exhaustion on whatever ground has now taken place, it is unnecessary for us to pass upon the correctness of the district judge's basis of decision.

Articles should be read so restrictively. The text of Articles 10 and 13, preceded by a portion of the text of Article 9 necessary to show the distinction between "arrest" and "confinement," is set forth below.[2] While it is true that Article 13 contains the clause specifying that "the arrest or confinement imposed on him [shall not] be any more rigorous than the circumstances require to insure his presence," Article 10 permits arrest or confinement "as circumstances may require." Presence at trial may be a significant—indeed, the most significant—factor to be considered in the aggregate of circumstances indicating the need and propriety of arrest or confinement; but it is not the sole one. We read Article 10 as permitting a variety of factors to be considered, and Article 13, not as a limitation on the broad grant contained in Article 10, but as a limitation on the *quality* of arrest or confinement once

either of the latter has been determined to be proper.

The limitations on the broad, unbridled discretion which Article 10 grants are contained in the Manual for Courts-Martial, United States (1968), ¶ 20c, promulgated by the President under the authority of Article 36, 10 U.S.C.A. § 836, the full text of which is also set forth below.[3] This regulation established a dual basis for determining the necessity of confinement, i. e., to insure presence or because of the seriousness of the offense charged. While stated in the disjunctive, these tests may be interrelated. Thus, what may not be a very serious charge when considered abstractly may be serious when viewed in the light of the potential penalty if guilt is found or in the light of the serviceman's previous record of disrespect for authority, or the pendency of a not very serious charge may raise a substantial risk of presence at trial where he has earlier demonstrated

2. 10 U.S.C.A.:
"§ 809. Art. 9. Imposition of restraint
(a) Arrest is the restraint of a person by an order, not imposed as a punishment for an offense, directing him to remain within certain specified limits. Confinement is the physical restraint of person.
 *  *  *  *  *
§ 810. Art. 10. Restraint of persons charged with offenses
Any person subject to this chapter charged with an offense under this chapter shall be ordered into arrest or confinement, *as circumstances may require;* but when charged only with an offense normally tried by a summary court-martial, he shall not ordinarily be placed in confinement. When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him. (emphasis added.)
§ 813. Art. 13. Punishment prohibited before trial
Subject to section 857 of this title (article 57), no person, while being held for trial or the result of trial, may be subjected to punishment or penalty *other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him*

*be any more rigorous than the circumstances require to insure his presence,* but he may be subjected to minor punishment during that period for infractions of discipline." (emphasis added.)

3. ¶ 20c.
"Confinement before trial. As used in this chapter, confinement is physical restraint, imposed by either oral or written orders of competent authority, depriving a person of freedom pending the disposition of charges. *Confinement will not be imposed pending trial unless deemed necessary to insure the presence of the accused at the trial or because of the seriousness of the offense charged.*" (emphasis added.)
Petitioners also called to our attention Fort Jackson Regulation T C Reg. 27–1, 9(a) which purportedly establishes a third basis for pretrial confinement "when it is necessary to prevent the accused from committing acts of violence to himself or others." We do not consider this regulation for the reason that, with a single possible exception, there appears to be no claim in this record that petitioners would be likely to commit acts of violence to themselves or others. Manifestly, any charge based upon the threat of violence to others, at least, would seem to fall into the "serious" offense category so as to justify confinement by this criterion.

that his obligation to remain with his unit weighs lightly with him. For a thorough discussion of the historical basis of Articles 10 and 13 and the expression of the view, by dictum, that the only goal of pretrial confinement is to insure presence at trial, see, United States v. Bayhand, 6 USCMA 762, 21 CMR 84, 90 (1956). See also, United States v. West, 12 USMCA 670, 31 CMR 256, 259 (1962).

Respondents urge upon us that we should vacate the order of dismissal of the district judge and remand the case to him for determination on the issues which he did not reach, although, alternatively, respondents contend that we may conclude to deny the writ on the merits. In argument, respondents state that they do not presently intend to offer additional evidence before the district judge if we adopt the suggestion of remand, but they do not foreclose that possibility. We agree that the order of the district judge should be vacated and the case remanded for determination on the merits of whether respondents exceeded the authority vested in them by Article 10, as limited by ¶ 20c of the Manual, in ordering petitioners' pretrial confinement. As we read the record, it will require supplementation to provide a basis for a determination on the merits.

Ordinarily, an appellate court does not make findings of fact in the first instance; that function is peculiarly one for the trial judge. It is true that the proof before the district judge was exclusively documentary. It consisted of various reports and affidavits. Our examination of the documents, however, does not show that the reasons for petitioners' confinement is undisputed. Colonel Thomas Maertens, who ordered petitioners' confinement to the stockade or to their barracks, acted as to some of petitioners on the recommendation of Captain Francis Wishart. While Colonel Maertens' affidavit that he took this action because it was necessary to insure petitioners' presence at their courts-martial, and because of the seriousness of the charges against them, was made a part of respondents' return to the petition for the writ, there is in the record a letter written by Colonel Maertens before execution of the affidavit, in which he stated in part that the reason for the confinement was " * * * in my judgment, the good order and the welfare of my entire brigade were seriously jeopardized." The record contains a letter which represents that Captain Wishart was quoted by another member of the company— Private Huffman—of which petitioners Pulley, Thomas and Rudder are members, as stating "[t]here are people in this company who disagree with some of the army's policies and with the war in Vietnam. Four are in the stockade. Three more are under arrest. It's wise not to get involved in these things. Because when I put someone in the stockade, I make sure he stays there for a good long time." It was represented to us in argument that the testimony of Private Huffman, who apparently acted as an informer to his superiors with regard to the protest activities of some of petitioners, was more fully developed in an earlier proceeding conducted under Article 32, 10 U.S.C.A. § 832—the administrative investigation to determine whether the charges against petitioners should be referred to a general court-martial. We are further told that the transcript of this testimony was not available to be made part of the record before the district judge when the matter came on for hearing before him.

In short, while there may be considerable evidence to demonstrate the legality of petitioners' confinement, we cannot say that the evidence is so one-sided that we should undertake a determination of that legality in the absence of findings of fact by the district judge. Colonel Maertens' letter may be in conflict with his later affidavit. Captain Wishart's reputed testimony may establish the predominant motive for confinement to be prohibited punishment. In either event, pretrial confinement may be illegal, and, since liberty is at stake, such an illegal confinement is a denial of constitutional right. If neither of the parties produces evidence to assist in a

resolution of the possible conflicts to which we have called attention, or to others which may be discovered as a result of a more detailed analysis of the record, it may well be that the district judge may wish to require the production of Colonel Maertens, Captain Wishart, or others, for interrogation as to possible inconsistencies between various explanations of the reasons for petitioners' confinement that they may have advanced. We are certain that the district judge will be willing, as we have tried to do, to conduct the hearing and decide the merits of the controversy with due dispatch.

In remanding the case to the district judge, we note that, in colloquy with counsel during the argument which he heard, the district judge expressed a possible reservation concerning his jurisdiction to inquire into the validity of petitioners' detention, aside from the question of whether petitioners had exhausted available remedies within the military organization. Indeed, respondents raise this point before us.

█ We think the matter of the jurisdiction of the district judge has been set-

tled since the decision in Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277 (1885). In that case, Dr. Wales, a medical director in the navy, was served with specifications of charges preferred against him and ordered to report to a general court-martial to be held at a future specified date. In the meantime, he was placed under arrest and confined to the limits of the City of Washington. He sought a writ of habeas corpus, which was denied on the ground that he was not suffering sufficient restraint to justify the issuance of the writ. Yet, in the discussion of the function of the writ, particularly as applied to one in the military or naval service, the opinion of the court leaves no doubt that as to pretrial custody the writ may issue to relieve an unusual restraint over and beyond the necessity of military rule and subordination.[4] See also, United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4 Cir., March 20, 1969); Hammond v. Lenfest, 398 F.2d 705 (2 Cir. 1968).

██ We have no doubt that confinement in the stockade or confinement to quarters would constitute such an un-

4. The following language from the Court's opinion is pertinent:

"There is no very satisfactory definition to be found in the adjudged cases of the character of the restraint or imprisonment suffered by a party applying for the writ of *habeas corpus*, which is necessary to sustain the writ. This can hardly be expected from the variety of restraints for which it is used to give relief. Confinement under civil and criminal process may be so relieved. Wives restrained by husbands, children withheld from the proper parent or guardian, *persons held under arbitrary custody by private individuals, as in a mad-house, as well as those under military control, may all become proper subjects of relief by the writ of habeas corpus.* Obviously, the extent and character of the restraint which justifies the writ, must vary according to the nature of the control which is asserted over the party in whose behalf the writ is prayed.

"In the case of a man in the military or naval service, where he is, whether as an officer or a private, always more or less subject in his movements, by the very necessity of military rule and sub-

ordination, to the orders of his superior officer, it should be made clear that *some unusual restraint upon his liberty of personal movement exists to justify the issue of the writ;* otherwise every order of the superior officer directing the movements of his subordinate, which necessarily to some extent curtails his freedom of will, may be held to be a restraint of his liberty, and the party so ordered may seek relief from obedience by means of a writ of *habeas corpus.*

"Something more than moral restraint is necesary to make a case for *habeas corpus. There must be actual confinement or the present means of enforcing it.*" Wales v. Whitney, 114 U.S., at 571, 5 S.Ct. at 1053. (emphasis supplied.) While this case held that confinement to the City of Washington was only moral restraint insufficient to justify the issuance of the writ, the language in respect of jurisdiction to issue the writ must be considered in the light of later decisions expanding greatly the types of restraint which the writ may relieve. See, United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4 Cir., March 20, 1969), and cases cited therein.

usual restraint, unless respondents have not exceeded their discretion by *reasonably* concluding that confinement is necessary to insure petitioners' presence at their court-martial or because of the seriousness of the charges against them, or both. As to these, the district judge will inquire.

Vacated and remanded.

ALBERT V. BRYAN, Circuit Judge (dissenting in part).

I would direct the District Court now to refuse the writ.

Despite the representation—and almost the insistence—of both sides that on remand no additional evidence will be offered, the Court now remands to allow the introduction of further evidence. Moreover, the parties agree that the rights of the appellants may be decided on the present record. True, an appeals court generally defers to the trial court for a decision of an issue not first resolved there, but the concessions just mentioned show that the reason for the conventional procedure does not obtain. Moreover, the urgency for an immediate determination of this intra-military problem is recognized by the Court, and emphasized by the facts of the case.

The factual basis on which the appellants were confined is set forth in the affidavit of Colonel Maertens, who ordered the confinement, as follows:

"On the evening of 20 March 1969, I was advised that an incident had occurred in the area of B Company which involved between 100 and 200 soldiers. The following day I personally conducted an investigation from 0900 to 1700 hours. I learned that a group of soldiers gathered on the grass outside B Company and began to shout their views on a variety of subjects including the Army, the war in Vietnam, and economic conditions in the United States, to soldiers in the barracks looking out the windows. Some 100–200 soldiers were spectators. There was *open ridicule and defiance of the United States Army* and lawful authority.

*Gestures were publicly made which mocked the military salute* and substituted the "Black Power" salute. A good deal of tension developed, and the *situation became explosive.* My Brigade Duty Officer, 1LT Austin, attempted to quell the disturbance. *His orders to stop the demonstration and return to barracks were disobeyed,* and *he was openly mocked and ridiculed.*

"I initially determined that the plaintiffs in the case of Chaparro et al v. Resor et al [D.C., 298 F.Supp. 1164], had committed violations of the Uniform Code of Military Justice during the foregoing incident. Accordingly, upon the recommendation of their company commander I decided to place Privates Pulley, Rudder, Cole, and Chaparro in pretrial confinement. I did so because I felt this was necessary to assure their presence at a possible subsequent court-martial and because of the seriousness of their misconduct. * * *" (Accents added.)

\*   \*   \*   \*   \*   \*

"As noted above, I decided to restrain plaintiffs because of the seriousness of the offenses and also to insure their presence at any possible future court-martial. In making my decision the past military records of the plaintiffs were of importance. For example Plaintiff Joseph Cole had received two 'Article 15s' (which is defined as nonjudicial punishment for a violation of the Uniform Code of Military Justice), the first for being absent without leave in violation of Article 86 of the Code, and the second for breaking the restriction imposed upon him as punishment for the violation of Article 86. The records of Plaintiff Delmar Thomas disclosed that he had been absent without leave in violation of Article 86 on two occasions: on 21 October 1968 and again on 19 January 1969. Plaintiff Pulley had been convicted of wilfully disobeying a lawful order by a Summary Court-Martial, in violation of Article 92 of the Code."

Notably, the affiant swears he personally investigated the incident. He describes the situation as "explosive". Further, he points out that several of the appellants had been convicted of absences without leave (AWOL). This would indicate the advisability of confinement to secure their presence at trial. Yet on remand we suggest to the District Court, in effect, to question these conclusions, with permission to substitute its view for that of Colonel Maertens. His was a considered judgment, and although reviewable by the civil courts, the authorities hold unanimously that it should not be disturbed unless he is shown to have abused his power. Nothing of the sort has been demonstrated here.

He acted altogether within the law. Article 10 of the Uniform Code of Military Justice, 10 U.S.C. § 810, empowered him to order "arrest or confinement, as circumstances may require". The Manual for Courts-Martial, § 20c, allowed confinement when "deemed necessary to insure the presence of the accused at the trial or because of the seriousness of the offense charged". Surely, these provisions vest, and indeed impose a discretion in the responsible officer to act whenever the circumstances seem to him to demand action.

The letter written by Colonel Maertens to appellants' counsel before their petition was filed and before the affidavit was made in no way detracts from or is inconsistent with the sworn averments of the affidavit. He wrote that the confinement was justified because "in *my judgment*, the good order and the welfare of my entire brigade were seriously jeopardized". Additionally, he refers to the "seriousness of the alleged offenses".

If on this showing, the order of a commanding officer may be overturned, then the discipline so necessary in the military—and particularly in the face of the Viet Nam conflict—is dealt a crippling blow.