UNITED STATES, Appellee,

v.

Edward O. HEARD, III, Airman Basic,
U. S. Air Force, Appellant.

No. 31,243.
ACM 21770.

U. S. Court of Military Appeals.

March 28, 1977.

*Major Byron D. Baur* argued the cause for Appellant, Accused. With him on the brief was *Colonel Jerry E. Conner.*

*Colonel Julius C. Ullerich, Jr.*, argued the cause for Appellee, United States. With him on the brief was *Captain Edward F. Rodriguez, Jr.*

Opinion of the Court

PERRY, Judge:

The appellant was convicted of 12 specifications of forgery and 1 specification of wrongful appropriation, in violation of Articles 123 and 121, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 923 and 921. He was sentenced to a bad-conduct discharge, confinement at hard labor for 18 months, and forfeitures of $217 pay per month for 18 months.

The staff judge advocate recommended that the convening authority disapprove the finding as to wrongful appropriation, as it was unsupported by the evidence, and that, because of this error, he reduce the period of confinement to 15 months. He further recommended that the appellant be given a "credit" of 40 days for pretrial confinement. The convening authority did reduce the adjudged confinement to 15 months. He also reduced the period of adjudged forfeitures. However, he refused to afford the appellant the additional 40-day reduction recommended by the staff judge advocate. In noting this omission, the United States Air Force Court of Military Review determined that the recommendation, while couched in terms of " 'credit,' " was one "manifestly" of a clemency nature and the convening authority, therefore, was bound to include it in his action or to explain his declination to do so in a letter of transmittal, citing *United States v. Keller*, 23 U.S.C.M.A. 545, 50 C.M.R. 716, 1 M.J. 159 (1975). *United States v. Heard*, 1 M.J. 538, 540 (A.F.C. M.R.1975). Because he did neither, the court reassessed the sentence and approved a bad-conduct discharge, confinement at hard labor for 13 months 20 days,

and forfeitures of $217 pay per month for 15 months.[1]

Before this Court, the appellant renews his objection, unsuccessfully litigated throughout, to 22 of the pretrial confinement days, contending that they were erroneously imposed. He asserts that this intrusion on his liberty requires meaningful sentence relief from this Court and urges that because he now has served his total sentence to confinement this relief must at least take the form of setting aside the punitive discharge. While we agree that pretrial confinement for those days was improperly ordered, we conclude that no prejudice remains after the action of the Court of Military Review. Article 59(a), UCMJ, 10 U.S.C. § 859(a). We therefore affirm.

## I

The appellant was apprehended on April 26, 1974, and placed in pretrial confinement by his squadron commander, Lieutenant List, on charges alleging 13 specifications of forgery, 4 specifications of making false statements contrary to 18 U.S.C. § 1014, and a single specification of wrongful appropriation. The appellant remained in pretrial confinement until May 7, when he was released and restricted to Lowry Air Force Base for the next 10 days. He was returned to pretrial confinement, again on the order of Lieutenant List, on June 29 and was released on July 2. On August 22, for a third time—on this occasion on the order of the appellant's new squadron commander, Captain Morrison—the appellant was incarcerated prior to trial, where he stayed until September 3. Finally, once again at Captain Morrison's order, the appellant was returned to pretrial confinement on September 18 and remained there until completion of his trial which commenced on September 25 and ended on September 28, 1974.

In evidence taken at the appellant's trial addressing the defense counsel's motion for dismissal of the charges because of alleged illegal pretrial confinement, Lieutenant List testified that on each of the two occasions he ordered the appellant into confinement, he did so because he feared that without confinement the appellant would have gone AWOL. At this level, the appellant does not challenge the legality of these confinement periods. However, Captain Morrison, who succeeded Lieutenant List as the appellant's immediate commanding officer, incarcerated the appellant the second two times for the candidly conceded reason that the appellant was a "pain in the neck" around the squadron and required too much additional attention by the training instructors and the first sergeant. It was, in short, a matter of convenience to Captain Morrison to jail the appellant for 22 days prior to trial.

## II

There is some amount of confusion apparent in the decisions of this Court, as well as in those of civilian Federal courts, as to what in the military constitutes a lawful basis upon which to confine an accused serviceperson pending trial by court-martial. Much of the problem emanates from several provisions in the Uniform Code which have been given varying interpretations when read together, and from a provision in the Manual for Courts-Martial, United States, 1969 (Rev.), which serves best only to muddle the situation further.

Subchapter II of the Uniform Code, Apprehension and Restraint, contains eight ar-

1. The court discovered that the convening authority had not disapproved the wrongful appropriation conviction. However, noting that he had reduced the sentence, as had been recommended as curative of the effect of his erroneous conviction, the court determined that this was an inadvertent omission and itself set aside that finding of guilty. The court also set aside the findings of 2 of the 12 forgery specifications of which the appellant had been convicted, determining that the same error which rendered the evidence insufficient to sustain the finding of wrongful appropriation similarly affected these findings. While the Court of Military Review did not specify how its general sentence reassessment was to be apportioned, as to attribution to the findings errors and the sentence error, we find the fact that the reassessment extended only to reducing the confinement by 40 days persuasive that the total reduction is due to effectuating the 40-day "credit."

ticles[2] which by their titles and content address the progress from the initial stage of apprehension, through the intermediate stage of deciding whether to order restraint of the individual apprehended, to the last stage of governing what occurs once the decision is made to restrain. Of particular concern in this context are Articles 9(d), 10, and 13:

Art. 9. Imposition of restraint

. . . . .

(d) No person may be ordered into arrest or confinement except for probable cause.

. . . . .

Art. 10. Restraint of persons charged with offenses

*Any person subject to this chapter charged with an offense under this chapter shall be ordered into arrest or confinement, as circumstances may require;* but when charged only with an offense normally tried by a summary court-martial, he shall not ordinarily be placed in confinement. When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him.

. . . . .

Art. 13. Punishment prohibited before trial

Subject to section 857 of this title (article 57), no person, while being held for trial or the result of trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, *nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence*, but he may be subjected to minor punishment during that period for infractions of discipline. [Emphasis added.]

■ The appellant argues that if these three statutory provisions are to be read in harmony, then the specific language of Article 13, regarding confinement to insure the accused's presence at trial, must be read as reflective of the true meaning of Article 10's broader language, concerning confinement "as circumstances may require." Further, it is suggested that, while Article 9(d) does not specify what "probable cause" refers to, "the most reasonable answer is probable cause to believe that the accused will flee prior to trial," citing Boller, *Pretrial Restraint in the Military*, 50 Mil. L.Rev. 71, 105 (1970). We are not so persuaded.

In *Courtney v. Williams*, 1 M.J. 267 (1976), this Court had occasion to treat the probable cause requirement of Article 9(d), and implied that the probable cause referred to was the probable cause traditionally necessary to arrest or confine any individual—that is, probable cause to believe that an offense had been committed and that the accused committed it. Thus, we held that to find probable cause under Article 9(d) is to answer the question whether an individual "could be detained," as opposed to "whether he should be detained." *Courtney v. Williams*, supra at 270.[3]

---

2. Article 7, Apprehension; Article 8, Apprehension of deserters; Article 9, Imposition of restraint; Article 10, Restraint of person charged with offenses; Article 11, Reports and receiving of prisoners; Article 12, Confinement with enemy prisoners prohibited; Article 13; Punishment prohibited before trial; and Article 14, Delivery of offenders to civil authorities, Uniform Code of Military Justice, 10 U.S.C. §§ 807–14, respectively.

3. Support for this position is found in the placement of Article 9 in relation to the other articles dealing with apprehension and restraint. Its location in this subchapter of the Uniform Code indicates that what is being discussed therein is the very first determination which must be made after the apprehension has occurred: whether probable cause exists to believe that the individual has committed any criminal offense. In accord with our interpretation of Article 9(d) is that of the drafters of the Manual for Courts-Martial, reflected in paragraph 20*d*(1), which, in discussing this term, prescribes that:

the known or reported facts should be sufficient to furnish reasonable grounds for believing that the offense has been committed by the person to be restrained.

■ As *Courtney* noted, this leaves the next question which must be answered, whether the individual "should" be detained. More precisely in terms of the case at bar, the question is what standard must be used in deciding whether an accused "should" be placed in pretrial confinement. While it is true that Article 13 speaks of confinement no "more rigorous than the circumstances require to insure his presence," both the title of that article as well as the full body thereof clearly convey that what is the concern of Article 13 is limiting the *conditions* of the pretrial confinement, rather than limiting the discretion of whether to impose the confinement at all. Thus, the article is entitled, "Punishment prohibited before trial," and it deals with what types of punishment are and are not permitted while the accused is confined awaiting trial. The whole thrust of Article 13, then, *assumes* pretrial confinement and goes only to its *conditions.* Moreover, the article preceding it addresses itself to confinement with enemy prisoners—again, concerning a condition of confinement and assuming the decision *whether* to confine already has been made.

On the other hand, the position and the content of Article 10 suggest that it is this provision which goes to the "should" he be detained question. It immediately follows Article 9 which, as earlier observed, entails the "could" he be detained inquiry that initially follows apprehension, and it immediately precedes Article 11 which speaks of receiving the prisoners and the reports involved in that process. And the matter discussed, in part, is *whether* an accused should be confined: that he may be confined "as circumstances may require," with the caution that when facing charges normally tried by summary court-martial, confinement prior to trial ordinarily will not be ordered.

The conclusion that Article 13 simply limits the conditions of confinement and not the decision to confine was first expressly announced by this Court in *United States v. Jennings,* 19 U.S.C.M.A. 88, 89, 41 C.M.R. 88, 89 (1969) (footnote omitted):

Under the Uniform Code of Military Justice one charged with an offense "shall be ordered into arrest or confinement, as circumstances may require".

. . .

Appellate Government counsel properly discount the applicability of Article 13 of the Code, correctly construing this provision as a limit on the nature of confinement and not on the discretion to confine. *Chaparro v. Resor,* 412 F.2d 443 (CA 4th Cir.) (1969); compare *United States v. Nelson,* 18 USCMA 177, 39 CMR 177, and *United States v. Bayhand,* 6 USCMA 762, 21 CMR 84.

*United States ex rel. Chaparro v. Resor,*[4] cited in *United States v. Jennings, supra,* similarly held that in the statutory scheme it is Article 10 which governs the decision whether to confine and it is Article 13 which limits the conditions of that confinement once imposed. And while there is dicta in *Bayhand*[5] to the effect that the only valid reason for pretrial confinement in the military is to assure the presence of the accused at his trial, no reasons are advanced for this position and no analysis of it, or of the Uniform Code which presumes to lead to it, is offered. In fact, the only discussion of Article 13 appears in the context of limiting the permissible conditions of the pretrial confinement, the issue in that case. Likewise, the *Nelson*[6] Court, which noted the "exhaustive analysis" of Article 13 in *Bayhand,* mentioned that provision only in terms of limiting the conditions of pretrial confinement.

Other caselaw of this Court is not ineluctably to the contrary. *United States v. Nixon,* 21 U.S.C.M.A. 480, 483–84, 45 C.M.R. 254, 257–58 (1972), by viewing "seriousness of that offense" and "likelihood of danger to others" as proper grounds for pretrial confinement, sub silentio implied that Arti-

---

4. 412 F.2d 443, 445 (4th Cir. 1969).

5. *United States v. Bayhand,* 6 U.S.C.M.A. 762, 766, 768, 21 C.M.R. 84, 88, 90 (1956).

6. *United States v. Nelson,* 18 U.S.C.M.A. 177, 180, 39 C.M.R. 177, 180 (1969).

cle 13's language mentioning only the necessity to assure presence at trial did not control the decision whether an accused should be confined.

In *DeChamplain v. Lovelace,* 23 U.S.C. M.A. 35, 48 C.M.R. 507 (1974), this Court did remark: [7]

> Confinement of an individual pending trial by court-martial is governed by Article 13. . . .
>
> Apart from the provision [of Article 9(d)]—not here pertinent—that no person may be ordered into arrest or confinement except for probable cause, Article 13 is the sole statutory provision relating to pretrial confinement. . . .
>
> The requirement of military law is that confinement be imposed only to assure the accused's presence at trial. If that purpose does not underlie the order of confinement, we have held such confinement illegal. *United States v. Jennings,* 19 USCMA 88, 41 CMR 88 (1969).

However, careful scrutiny of these statements belies their soundness. First, it is quite obvious that, whatever controlling import is or is not to be given it, Article 10 does exist and it does relate to pretrial confinement. Thus, the whole premise of the comment in *DeChamplain,* which appears in the middle paragraph above quoted, is infirm. Second, the citation to *Jennings* for the assertion that pretrial confinement is illegal if ordered for any purpose other than to assure the accused's presence at trial, simply is inaccurate. While the opinion in *Jennings* did state that pretrial confinement is not to be imposed except to insure the accused's trial presence "or because of the seriousness of the offense" [8] —which itself contradicts the propriety of citing as it appears in *DeChamplain*—the authority cited in support of that assertion was not Article 13 at all, but rather paragraph 20c, MCM. Indeed, as set out earlier,

the Court in *Jennings* expressly held that Article 13 is "a limit on the nature of confinement and not on the discretion to confine." [9]

Finally, in a footnote to our recent opinion in *Courtney v. Williams, supra,*[10] there is the statement that "[t]he question whether the military person should be detained is resolved on the basis of need to detain in order to insure presence at trial. Article 13, UCMJ, 10 U.S.C. § 813; *United States v. Bayhand,* 6 USCMA 762, 21 CMR 84 (1956)." However, *Bayhand* is cited as direct authority therefor when *Bayhand,* as discussed above, really is not controlling at all on the question.

### III

Concluding, as we do, that Article 10's "as circumstances may require" language governs the decision whether to place an accused in pretrial confinement, inquiry must proceed to what if any limitations of law exist on the application of that broad and general phrase. In *United States ex rel. Chaparro v. Resor, supra,* the Fourth Circuit Court of Appeals addressed this matter: [11]

> The limitations on the broad, unbridled discretion which Article 10 grants are contained in the Manual for Courts-Martial, United States (1968) [sic], ¶ 20c, promulgated by the President under the authority of Article 36, U.S.C.A. § 836, the full text of which is also set forth below. This regulation established a dual basis for determining the necessity of confinement, i. e., to insure presence or because of the seriousness of the offense charged. While stated in the disjunctive, these tests may be interrelated. Thus, what may not be a very serious charge when considered abstractly may be serious when viewed in the light of the potential penalty if guilt is found or in the light of the serviceman's previous record of disre-

---

**7.** 23 U.S.C.M.A. at 36–37, 48 C.M.R. at 507–08.

**8.** *United States v. Jennings,* 19 U.S.C.M.A. 88, 89, 41 C.M.R. 88, 89 (1969).

**9.** *Id.*

**10.** 1 M.J. 267, 271 n. 12 (1976).

**11.** 412 F.2d at 445–46 (footnote omitted).

spect for authority, or the pendency of a not very serious charge may raise a substantial risk of presence at trial where he has earlier demonstrated that his obligation to remain with his unit weighs lightly with him.

■ Paragraph 20c, MCM, cited in *Chaparro* as authority for this "dual basis," provides, in pertinent part:

Confinement will not be imposed pending trial unless deemed necessary to insure the presence of the accused at the trial or because of the seriousness of the offense charged.

Appellate Government counsel before this Court urge a literal reading and application of this language, suggested as binding,[12] and contend that seriousness of the offense per se justifies confining an accused pending his court-martial thereon. The Court does not agree.

■ An accused is presumed innocent until proved guilty, and, therefore, punishment for an alleged offense is prohibited before trial. *See* Article 13, UCMJ 10 U.S.C. § 813. Any rule to the contrary would be to deny an accused due process of the law. U.S.Const. amend. V. Practically, it must be recognized that confinement itself is a form of penal servitude. *United States v. Bayhand, supra* at 766, 21 C.M.R. at 88. Hence, unless confinement prior to trial is compelled by a legitimate and pressing social need sufficient to overwhelm the individual's right to freedom—given the fact that probable cause exists to believe he has committed a crime—restrictions unnecessary to meet that need are in the nature of intolerable, unlawful punishment. Thus, the Government must make a strong show-

ing that its reason for incarcerating an accused prior to his trial on the charged offense reaches such a level, for otherwise the right to be free must be paramount.

■ Actually, the determination whether pretrial confinement may be imposed involves inquiry at two levels. The first is the basis for ordering confinement. We have long recognized that the necessity to assure the presence of an accused at his trial is an interest which will support restrictions on the individual's pretrial activities, assuming that a showing is made that it is not likely that he will be present absent them. The only other concern of the people which suggests itself as being so weighty is the importance of avoiding foreseeable future serious criminal misconduct of the accused, including any efforts at obstructing justice, if he is set free pending his trial.[13] In a phrase, this is preventive detention and it is a basis for pretrial confinement which, when invoked in the civilian community, is most often accomplished behind the mask of monetary bail set too high for the individual to meet. ABA Standards, Pretrial Release, Introduction at 6 (1968); Hermann, *Preventive Detention, a Scientific View of Man, and State Power*, 1973 U.Ill.L. Forum 673, 675. In the military, where there is no such bail provided for, and in a growing number of civilian jurisdictions where money bail has come into disrepute, it is a basis for pretrial confinement which must be recognized in the clear light of day as necessary and legitimate unto itself. *See* ABA Standards, Pretrial Release § 5.5, at 65–66 (1968) (commentary), and authorities cited therein.

Assuming the presence in a given case of one or both of these concerns of assuring

---

12. Article 36, U.C.M.J. 10 U.S.C. § 836, only authorizes the President of the United States to prescribe binding rules of "procedure, including modes of proof, *in cases before courts-martial . . . .*" [Emphasis added]. *See United States v. Ware,* 1 M.J. 282, 285 n. 10 (1976).

13. *See Rehman v. California,* 85 S.Ct. 8, 9, 13 L.Ed.2d 17 (1964) (Douglas, Circuit Justice); *Leigh v. United States,* 82 S.Ct. 994, 996, 8 L.Ed.2d 269 (1962) (Warren, Circuit Justice); *Carbo v. United States,* 82 S.Ct. 662, 666–69, 7

L.Ed.2d 769 (1962) (Douglas, Circuit Justice); Boller, *Pretrial Restraint in the Military,* 50 Mil.L.Rev. 71, 80, 81, 91, 108–109 (1970); Note, *Bail Pending Appeal in the Federal Courts,* 32 N.Y.U.L.Rev. 557, 568–74 (1957); Note, *Considerations Involved in the Granting of Bail Pending Appeal in the Federal Courts,* 25 Geo. Wash.L.Rev. 693, 700–701 (1957); Comment, 39 Marq.L.Rev. 275, 278–82 (1970). *Cf.* ABA Standards, Pretrial Release, Introduction at 5–7 (1968).

presence at trial and of protecting the safety of the community, the inquiry then must proceed to whether there is the need for confinement to meet the exigency, as opposed to some lesser form of restriction or condition on release. There are serious questions about the constitutionality of preventive detention ordered as the result of a surmise—educated or otherwise—of a judicial officer that the individual before him might pose a threat to society in the form either of additional crime or of obstruction of justice if he is free pending trial.[14] Additionally, there are complex practical difficulties in applying a preventive detention measure of that sort,[15] to say nothing of the grave potential consequences to the accused and to his case flowing directly from pretrial confinement.[16] Yet, there can be no doubt but that weapons sufficient to obviate the threat of additional criminal conduct pending trial must be in the arsenal of the judicial officer making the release decision, else society would be at the mercy of unbridled criminal suspects even once charged.

We are convinced, therefore, that Article 10 of the UCMJ, which authorizes confinement only "as circumstances may require," must be interpreted quite literally, and we believe that the only time that circumstances require the ultimate device of pretrial incarceration is when lesser forms of restriction or conditions on release have been

**14.** It is unclear, and the subject of continuing debate, whether the Eighth Amendment to the United States Constitution implies an absolute right to bail, or only prescribes that bail, once granted, must not be "excessive." *Compare Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951); *Carlson v. Landon,* 342 U.S. 524, 556, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (Black, J., dissenting); *Trimble v. Stone,* 187 F.Supp. 483 (D.D.C.1960); *with Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); *Mestrain v. Hedman,* 326 F.2d 708 (8th Cir.), *cert. denied,* 376 U.S. 695, 84 S.Ct. 1128, 11 L.Ed.2d 982 (1964). *See* Meyer, *Constitutionality of Pretrial Detention,* 60 Geo.L.J. 1139, 1178–94 (1972); Dershowitz, *Imprisonment by Judicial Hunch,* 57 A.B.A.J. 560 (1971); Foote, *The Coming Constitutional Crisis in Bail: I,* 113 U.Pa.L.Rev. 959 (1965). *See also Blunt v. United States,* 322 A.2d 579 (D.C.1974); *Dash v. Mitchell,* 356 F.Supp. 1292 (D.D.C.1972); *Carbo v. United States, supra; Williamson v. United States,* 184 F.2d 280 (2d Cir. 1950). Moreover, it has been suggested that a broad preventive detention provision without certain procedural safeguards might well violate the Fifth Amendment due process protection, as it arguably would deprive the accused of liberty prior to conviction. *See* ABA Standards, Pretrial Release § 5.5, at 67 (1968) (commentary).

**15.** Not only is the evidence supporting the *need* for preventive detention "not extensive," ABA Standards, Pretrial Release § 5.5, at 68 (1968) (commentary), but it is uncertain exactly how courts might go about identifying before-the-fact those most likely to commit further crimes if released pending trial. *See* Hermann, *Preventive Detention, a Scientific View of Man, and State Power,* 1973 U.Ill.L. Forum 673, 689–92; Foote, *The Coming Constitutional Crisis in Bail: II,* 113 U.Pa.L.Rev. 1125, 1169 (1965); D.C. Crime Commission Report 931–32 (1966) (statement of Commissioner Wald); Note, *Preventive Detention Before Trial,* 79 Harv.L. Rev. 1489, 1505–08 (1966). Thus, any doubts in a given case would be resolved in favor of detention and, inevitably, vastly more people will be confined than necessary. *See* ABA Standards, Pretrial Release § 5.5, at 69 (1968) (commentary); Craig & Dobrovir, *The French Experience with Preventive Detention,* 57 A.B. A.J. 565 (1971). Any errors made in favor of detention are not apparent, for no confined person could commit a crime in the community, thus psychologically reinforcing in judges' minds the propriety of confining when in doubt. *See* Foote, *The Coming Constitutional Crisis Bail: II, supra* at 1174; Dershowitz, *supra* note 14, at 77.

**16.** The psychological and physical conditions of jail life in pretrial detention often are worse than for convicts: the detainee most likely loses his job; he is prevented or restricted in contributing to the preparation of his defense; and his family suffers substantially. ABA Standards, Pretrial Release, Introduction at 2–3 (1968). Additionally, certain studies indicate that a jailed accused is more likely to be convicted than his free counterpart, Ares, Rankin, and Sturz, *The Manhattan Bail Project: An Interim Report on the Use of Pre-Trial Parole,* 38 N.Y.U.L.Rev. 67, 84 (1963); Foote, *supra* note 15 at 1137–51 (1965), and he is less likely to receive probation because he has been unable to demonstrate his reliability under supervision. Jr. Bar Sect., Bar Assn of the District of Columbia, The Bail System of the District of Columbia 40 (1963). These conclusions are supported even when other causative factors, like strong evidence of guilt or a long criminal record, are held constant in the comparison. Rankin, *The Effect of Pretrial Detention,* 39 N.Y.U.L.Rev. 641 (1964).

tried and have been found wanting. To this end, this Court embraces the ABA Standards, Pretrial Release §§ 5.1, 5.2, 5.6, 5.7, and 5.8 (1968) [17] insofar as the peculiarities of the military system do not make it impossible for them to apply. In other words, only when this "stepped" process of appropriate lesser forms of restriction or conditions on release is first tried and proves inadequate, is pretrial confinement "require[d]" within the meaning of Article 10, U.C.M.J. We believe, as do the authors of these standards,[18] that adherence to these procedural and conceptual measures will meet both the possible constitutional infirmities and the practical troubles enwrapping preventive detention, and, consistently, it will apply the same force of logic to the risk of flight consideration.[19]

## IV

■ It is against these criteria, then, that we evaluate Captain Morrison's decision to confine the appellant 22 days prior to trial. His testimony reveals that the appellant was confined on each occasion at the recommendation of the first sergeant and senior training instructor, which in turn was the result of their inability to get the appellant to do his work or to make his formations. Captain Morrison never feared that the appellant would absent himself if free to do so. In short, Captain Morrison testified:

> I put him in because he was such a pain in the neck around the squadron and required to much additional attention by the TIs and the first sergeant. I never had fear he would go AWOL.

17. These standards are reproduced as an appendix to this opinion.

18. ABA Standards, Pretrial Release § 5.5, at 67, 70–71; § 5.7, at 72; § 5.8, at 73–74 (1968) (commentary). See Note, *Preventive Detention Before Trial, supra* note 15, at 1500–05 (1966).

19. Any system which has provision for the pretrial confinement of an accused, without possibility of bail, even on restricted bases, must concomitantly afford procedural safeguards both to assure that the decision to confine is properly and judiciously reached and to assure that the accused is speedily tried to minimize

While the appellant had a "medical waiver" which he argues would have excused him from some of the strenuous work involved, much of what Captain Morrison testified to conceivably could have formed the basis of additional charges, nonjudicial punishment under Article 15 of the Code, or administrative action. However, as the alleged misconduct constituted no threat to the safety of the community, it does not satisfy as a basis for ordering pretrial confinement. Nothing in the appellant's background or in the offenses charged against him indicates a reasonable likelihood that his release would pose a danger to anyone. Finally, as Captain Morrison acknowledged, the appellant was not an unacceptable risk to be present for his court-martial. Hence, confinement for those 22 days was not "require[d]" and was, therefore, unlawful.[20]

## V

■ We proceed now to the consideration of whether any prejudice to the appellant emanating from the wrong remains to be corrected at this level. Under the reduced sentence of 13 months 20 days, which began when sentence was adjudged on September 28, 1974, the appellant's full term release date was November 17, 1975. Deducting 6 days per month statutory good time, a total of 82 days, results in the appellant's normal release date under this sentence being August 27, 1975. Comparatively, under the original 15-month sentence, and had the practice mandated in our recent case of *United States v. Larner*, 1 M.J. 371 (1976), been employed so as to have begun that sentence in theory on Sep-

the impact of the necessary confinement. *Courtney v. Williams*, 1 M.J. 267 (1976), and *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), furnish those protections to the military accused.

20. As there was no *basis* in this case for pretrial confinement, it is irrelevant to our decision here that lesser forms of restriction or conditions on release were not first utilized in lieu of confinement.

tember 6, 1974,[21] the full term release date would have been December 6, 1975. Allowing 6 days per month statutory good time—90 days—the appellant's normal release date under the original sentence would have been September 7, 1975, 11 days later than his normal release date under the *reduced* sentence. Thus, as to this aspect of the effect on his sentence the appellant is in a better position under his *reduced* sentence than he would have been under a properly *credited* sentence under *Larner*.

However, as this Court recognized in *Larner,* an additional aspect of potential prejudice lay in the effect on the parole eligibility date, for the first aspect above discussed necessarily is limited to those situations wherein it is presumed that the *full* sentence will be served, which in reality are truly unusual cases. Assuming that an individual who is sentenced, as was the appellant here, is eligible for parole after serving one-third of his full sentence, on the reduced sentence of 13 months 20 days the appellant was eligible for parole after 4 months 16 days, on February 13, 1975. On the other hand, under the approved 15-month sentence, assuming appropriate application of *Larner*, the appellant would have had a final parole eligibility date of February 6, 1975, 7 days earlier than under the reduced sentence currently in effect in this case. Hence, despite the sentence action taken by the Court of Military Review herein, a degree of possible prejudice remains at this level, *i.e.,* 7 days in parole eligibility.

The bulk of the prejudice has to this point been cured, and by this date the appellant undoubtedly has been released from confinement. True relief, therefore, may not be afforded the appellant in that portion of his sentence. In view of the small amount of possible remaining prejudice in

confinement time to which the appellant was subject, we do not deem it appropriate in this case to adjust the other aspects of the sentence, as the appellant requests. *Cf. United States v. Nelson,* 18 U.S.C.M.A. 177, 39 C.M.R. 177 (1969).

One final observation must be made. Correct application of this decision and of *United States v. Larner, supra,* at the trial level will serve to remedy illegal pretrial confinement already served. But the most appropriate "remedy"—and, indeed, that which reflects best on our justice system—is for illegal pretrial confinement not to be suffered at all.

The decision of the United States Air Force Court of Military Review is affirmed.

## APPENDIX

5.1 *Release on order to appear or on defendant's own recognizance.*

(a) It should be presumed that the defendant is entitled to be released on order to appear or on his own recognizance. The presumption may be overcome by a finding that there is substantial risk of nonappearance, or a need for conditions as provided in section 5.2 or for prohibitions as provided in section 5.5. In capital cases, the defendant may be detained pending trial if the facts support a finding that the defendant is likely to commit a serious crime, intimidate witnesses or otherwise interfere with the administration of justice or will flee if released.

(b) In determining whether there is a substantial risk of nonappearance, the judicial officer should take into account the following factors concerning the defendant:

(i) the length of his residence in the community;

---

21. In that decision, this Court recognized the legal and practical inequities which may result when the method used to remedy illegal pretrial confinement served simply was to reduce the otherwise appropriate sentence accordingly on a day-for-day basis. Therefore, it was our ruling that the only legal and fully adequate remedy in all cases is to approve the otherwise appropriate sentence, but judicially to order an administrative credit thereon for the number of days served illegally in pretrial confinement. In application, then, the date that service of the sentence theoretically is begun is "backed up" the number of days of illegal pretrial confinement. In this case, where the appellant served 22 days of illegal pretrial confinement, and sentence was adjudged on September 28, 1974, theoretically the appellant began service of that sentence on September 6, 1974.

(ii) his employment status and history and his financial condition;

(iii) his family ties and relationships;

(iv) his reputation, character and mental condition;

(v) his prior criminal record, including any record of prior release on recognizance or on bail;

(vi) the identity of responsible members of the community who would vouch for defendant's reliability;

(vii) the nature of the offense presently charged and the apparent probability of conviction and the likely sentence, insofar as these factors are relevant to the risk of nonappearance; and

(viii) any other factors indicating the defendant's ties to the community or bearing on the risk of willful failure to appear.

(c) In evaluating these and any other factors, the judicial officer should exercise care not to give inordinate weight to the nature of the present charge.

(d) In the event the judicial officer determines that release on order to appear or on his own recognizance is unwarranted, he should include in the record a statement of his reasons.

## 5.2 Conditions on release.

(a) Upon a finding that release on order to appear or on defendant's own recognizance is unwarranted, the judicial officer should impose the least onerous condition reasonably likely to assure the defendant's appearance in court.

(b) Where conditions on release are found necessary, the judicial officer should impose one or more of the following conditions:

(i) release the defendant into the care of some qualified person or organization responsible for supervising the defendant and assisting him in appearing in court. Such supervisor should be expected to maintain close contact with the defendant, to assist him in making arrangements to appear in court and, where appropriate, to accompany him to court.

The supervisor should not be required to be financially responsible for the defendant, nor to forfeit money in the event he fails to appear in court;

(ii) place the defendant under the supervision of a probation officer to other appropriate public official;

(iii) impose reasonable restrictions on the activities, movements, associations and residences of the defendant;

(iv) where permitted by law, release the defendant during working hours but require him to return to custody at specified times; or

(v) impose any other reasonable restriction designed to assure the defendant's appearance.

## 5.5 Prohibition of wrongful acts pending trial.

Upon a showing that there exists a danger that the defendant will commit a serious crime or will seek to intimidate witnesses, or will otherwise unlawfully interfere with the orderly administration of justice, the judicial officer, upon the defendant's release, may enter an order:

(a) prohibiting the defendant from approaching or communicating with particular persons or classes of persons, except that no such order should be deemed to prohibit any lawful and ethical activity of defendant's counsel;

(b) prohibiting the defendant from going to certain described geographical areas or premises;

(c) prohibiting the defendant from possessing any dangerous weapon, or engaging in certain described activities or indulging in intoxicating liquors or in certain drugs;

(d) requiring the defendant to report regularly to and remain under the supervision of an officer of the court.

## 5.6 Violations of conditions on release.

Upon a verified application by the prosecuting attorney alleging that a defendant has willfully violated the conditions of his release, a judicial officer should issue a

warrant directing that the defendant be arrested and taken forthwith before the court of general criminal jurisdiction for hearing. A law enforcement officer having reasonable grounds to believe that a released felony defendant has violated the conditions of his release should be authorized, where it would be impracticable to secure a warrant, to arrest the defendant and take him forthwith before the court of general criminal jurisdiction.

### 5.7 Sanctions for violation of conditions.

After hearing, and upon finding that the defendant has willfully violated reasonable conditions imposed on his release, the court should be authorized to impose different or additional conditions upon defendant's release or revoke his release.

### 5.8 Commission of serious crime while awaiting trial.

Where it is shown that a competent court or grand jury has found probable cause to believe that a defendant has committed a serious crime while released pending adjudicating of a prior charge, the court which initially released him should be authorized, after appropriate hearing, to review and revise the conditions of his release or to revoke his release where indicated. In cases in which release is revoked, the case should be tried as soon as possible.

FLETCHER, Chief Judge (concurring):

I can only associate myself with a formula that prescribes preventive detention or any lesser degree thereof where there are proper safeguards. I believe there are significant due process problems in predicting future criminal conduct. The problem is the difficulty in reaching the predictability factor with sufficient accuracy. A wrong guess that leads to unwarranted detention is an infringement of the citizen's right to due process of law, in my view.

The safeguards necessary to implement the procedure expressed in Judge Perry's opinion would of necessity have to be the same as those for a full scale trial, without a jury.

The proposition announced in *Courtney v. Williams* 1 M.J. 260 (1976), was recognized by Judge Cook in the majority order in *Fletcher v. Commanding Officer*, Misc. No. 76–103 (Feb. 18, 1977). I cannot reconcile the Judge's decision in the order last noted and his separate opinion in this case.

COOK, Judge (concurring in part and dissenting in part):

Some of the problems generated in practice by the release provisions of the Federal Bail Reform Act and the inapplicability of some of the ABA Standards to the military community would, in any case, deter me from unqualified acceptance of the majority's precept that pretrial confinement may be imposed "only when this 'stepped' process of appropriate lesser forms of restriction or conditions on release is first tried and proves inadequate." As the new rule is apparently intended to replace entirely the provisions of paragraph 20c of the Manual for Courts-Martial, I am constrained to disagree with it. In *United States v. Gray*, 6 U.S.C.M.A. 615, 620, 20 C.M.R. 331, 336 (1956), the Court held that the imposition of confinement previous to trial, as provided by the Uniform Code of Military Justice, is subject to "normal command controls" so that a superior commander can impose conditions upon his subordinates in regard to the exercise of their authority to confine. I have no doubt that the regulations as to pretrial confinement prescribed by the President on this subject have the force and effect of law. *United States v. Haynes*, 15 U.S.C.M.A. 122, 35 C.M.R. 94 (1964).

My views differ from those of the majority in other respects, and I expressly disagree with the implications of note 12, but I see no useful purpose in elaboration. The points on which I agree with the majority are: (1) that the accused's confinement was illegal because it was imposed to serve the convenience of the commander, and was not for any reason authorized by law. *United States v. Haynes, supra;* and (2) that while illegal pretrial confinement merits consider-

ation in regard to the sentence, it does not taint an otherwise valid conviction and does not require corrective action where, as here, a remand would merely constitute an empty gesture. *United States v. Porter,* 11 U.S.C.M.A. 170, 175, 28 C.M.R. 394, 399 (1960).