**UNITED STATES, Appellee,**

v.

**Private First Class Celbrough T. GAS-KINS, SSN 228–72–3619, United States Army, Appellant.**

**CM 436837.**

U. S. Army Court of Military Review.

22 June 1978.

Colonel Robert B. Clarke, JAGC, Major Benjamin A. Sims, JAGC, Captain Demmon F. Canner, JAGC, and Captain William J. Carter, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Captain Laurence M. Huffman, JAGC, and Captain Landon P. Snell, III, JAGC, were on the pleadings for appellee.

Before JONES, MITCHELL and De-FORD, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Judge:

The appellant was convicted of rape and two specifications of assault with a dangerous weapon in violation of Articles 120 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 928, by a military judge sitting as a general court-martial. His approved sentence included a dishonorable discharge, confinement at hard labor for eleven (11) years, forfeiture of all pay and allowances, and reduction to the grade of Private (E-1).

The facts, briefly summarized, are that during the early morning hours of 1 October 1977, the appellant drew a switch blade knife, and without invitation, entered the automobile which the victim and another young woman were occupying while parked at the train station at Osnabruck, West Germany. The young woman sitting with the victim opened her door and escaped the vehicle. The appellant, while holding the open knife, ordered the victim to drive her vehicle on secondary roads toward the town of Melle. Enroute, the appellant ordered the victim to stop on a deserted road. He then directed her to remove her clothing, at which time two episodes of sexual intercourse took place. Following these events, the appellant directed the victim to a nearby exit to the autobahn where he departed her vehicle. She then returned to her parents home in Osnabruck at which time she informed her parents and the German police of the appellant's actions. The appel-

lant was arrested by German police on 2 October 1977, and turned over to Army authorities on the same date. His commander placed him in pretrial confinement on that date and he remained in that status until the date of trial (58 days).

Appellant, through counsel, has assigned several errors. The Court has examined these assignments and finds that none are meritorious. However, we will comment on one of the allegations.

Appellant alleges that the military judge erred when he failed to grant appellant's motion to dismiss due to unlawful pretrial confinement.[1] The thrust of appellant's assignment is that the appellant's commander did not try lesser forms of restraint prior to imposing pretrial incarceration as mandated by the decision in *United States v. Heard,* 3 M.J. 14 (C.M.A.1977).

*Heard* stated that the only time that "circumstances require the ultimate device of pretrial incarceration is when lesser forms of restriction or conditions on release have been tried and have been found wanting." 3 M.J. at 21–22. It is this phrase of the *Heard* opinion that appellant defense counsel urge us to apply literally in the appellant's case. It only takes a moment to visualize some absurd results were we to adopt appellate defense counsel's view as to the interpretation of this phrase. We do not believe that the United States Court of Military Appeals intended such a result.

*Heard* also established that Article 10, UCMJ, is the controlling statute for pretrial confinement. The language in the statute "as circumstances may require" must be interpreted literally.[2]

An accused is presumed to be innocent until his guilt is proved beyond a reasonable doubt in a court of appropriate jurisdiction. Punishment prior to trial for an alleged offense is prohibited as confinement is a form of penal servitude.[3] Unless detention prior to trial is compelled by legitimate and pressing social needs, the individual's right to freedom remains paramount.

That Court recognized two bases for pretrial detention: (1) the necessity to assure the presence of an accused at his trial; and (2) avoiding foreseeable future criminal misconduct including obstruction of justice.[4]

*Heard* also established the following two levels of inquiry in determining whether restraint upon an individual's personal liberty should be imposed. The first is the basis for ordering detention and the second involves the appropriate level of detention.

With regard to the first consideration, there must be probable cause to believe that an accused has committed an actionable offense or offenses. Secondly, the character of the alleged offense committed must be evaluated in light of an accused's behavioral pattern and the "serviceman's previous record of disrespect for authority." As the Court in *Heard* noted:

"What may not be a very serious charge when considered abstractly may be serious when viewed in light of the serviceman's previous record of disrespect for authority, or the pendency of a not very serious charge may raise a substantial risk of presence at trial where he has earlier demonstrated that his obligation to remain with his unit weighs lightly with him."

The foregoing considerations also must be included in the determination of the degree of risk ascertainable regarding whether an accused may choose flight to avoid trial and the foreseeable future criminal misconduct if an accused is allowed to remain free pending trial.

■ Assuming the existence of an appropriate basis for ordering detention, the au-

1. The nature of relief to be afforded where illegal pretrial confinement is determined to exist is not dismissal but for the court to approve the otherwise appropriate sentence and order administrative credit thereon for the number of days served illegally. *See* footnote 21, *United States v. Heard,* 3 M.J. 14, 23 (C.M.A.1977).

2. *Heard, supra,* at 19.

3. *Id.* at 20.

4. *Id. See also Courtney v. Williams,* 1 M.J. 267 (C.M.A.1976).

thority concerned arrives at the second level of inquiry noted above. That is whether there is a need for pretrial detention to meet the exigency as opposed to some lesser form of restraint upon a serviceman's personal liberty. Thus "a stepped process of appropriate lesser forms of restriction or conditional release" must be considered against the offenses committed and the concomitant considerations of insuring the individual's presence for trial and protection of the community when determining whether preventive detention is required.

■ It is obvious from the foregoing commentary that pretrial detention (*i. e.*, confinement), should not be employed unless there is evidence which compels reasonable minds to conclude that there is (1) a substantial probability of the accused's flight to avoid trial, or (2) it is reasonably foreseeable that an accused may commit future acts of serious criminal misconduct including obstruction of justice if he remains free pending trial.

This standard sets forth what we believe to be the proper interpretation of the decision in *United States v. Heard, supra.*

■ Accordingly, we do not believe that *Heard* requires that an accused in every case must first be placed in a form of conditional restraint and allowed to manifest, by objective acts, that such restraint is inadequate. When the person's prior conduct has indicated such efforts would be futile and potentially would jeopardize the military unit and the community with unnecessary risk of harm, or otherwise obstruct the administration of justice, the more severe form of restraint may be initially imposed.

■ With these views in mind, we turn to consideration of the appellant's case. The appellant's company commander was aware that the appellant had been charged with rape and kidnapping. He was aware that the appellant had been arrested and

we conclude he possessed probable cause to believe that the appellant had committed serious offenses in violation of the Uniform Code of Military Justice. In addition, the commander considered the possibility of lesser forms of restraint. He stated that he had three bases for employing pretrial detention. First, he did not believe that the appellant would be present for trial because the appellant had in the past demonstrated a lack of stability occasioned by minor transgressions of absence without leave, appellant also had exhibited violent anger manifested toward officers and noncommissioned officers, and the appellant had, in the past, acted upon impulse without consideration of the consequences of his action. Second, the commander considered the seriousness of the alleged offenses committed by appellant. Third, he was aware of the hostility of the local German populace, which he believed could result in harm to the appellant were he free to enter the local community.[5]

In addition, the commander was responsible for a highly sensitive mission and commanded a unit of only 25 people in an isolated post. He could not afford placing the appellant under guard or any other form of supervised conditional release without that loss of manpower affecting his sensitive mission. (R 19–28).

In summary, the commander had probable cause to believe that the appellant had committed serious felony type offenses. Those offenses when considered against appellant's previous conduct indicated that a form of restraint upon appellant's freedom was required.

■ The above enumerated factors indicated that pretrial detention was the appropriate form of restraint as distinguished from a lesser form of conditional release or administrative restriction in view of the circumstances in this case. Accordingly, we hold that the military judge did not err in denying appellant's motion for relief of illegal pretrial confinement.

---

5. This Court believes that protection of an accused from bodily harm can, under some circumstances, be a basis of restraint upon personal liberty. *See* Standard 2.1, Standards relating to pretrial release, American Bar Association's Project on Standards for Criminal Justice.

The approved findings of guilty and the sentence are affirmed.

Senior Judge JONES and Judge MITCHELL concur.