# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM S32593**

_____

**UNITED STATES**
*Appellee*

**v.**

**Nicholas S. BABIAN**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 19 March 2021

_____

*Military Judge:* Andrew R. Norton.

*Approved sentence:* Bad-conduct discharge, confinement for 4 months, reduction to E-1, and a reprimand. Sentence adjudged 27 February 2019 by SpCM convened at Keesler Air Force Base, Mississippi.

*For Appellant:* Major Stuart J. Anderson, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Peter F. Kellett, USAF; Mary Ellen Payne, Esquire; Kelsey MacLeod (legal extern).[1]

Before MINK, KEY, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge MINK delivered the opinion of the court, in which Judge KEY and Judge ANNEXSTAD joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

---

[1] Ms. MacLeod was at all times supervised by an attorney admitted to practice before this court.

MINK, Senior Judge:

A military judge sitting alone as a special court-martial convicted Appellant, contrary to his pleas, of one specification of wrongful use of methamphetamine; one specification of wrongful possession of heroin; and one specification of wrongful possession of alprazolam, a controlled substance, each in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[2,3] The military judge sentenced Appellant to a bad-conduct discharge, confinement for four months, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence but waived the mandatory forfeitures and directed payment to Appellant's dependent spouse for the benefit of their minor child.

The sole issue raised by Appellant on appeal is whether the military judge abused his discretion when he denied Appellant's motion for appropriate relief for illegal pretrial confinement. We also consider whether Appellant is entitled to relief for facially unreasonable post-trial delay. We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

On 31 January 2019, Appellant was placed into pretrial confinement at a civilian confinement facility in Gulfport, Mississippi (MS), pursuant to an order from his squadron commander. On that same date, a pretrial confinement review officer (PCRO) was appointed.

At the time he was placed into pretrial confinement, Appellant was facing charges, which had been previously referred to court-martial, for allegedly failing to go at the time prescribed to his place of duty on divers occasions and wrongfully using and possessing controlled substances. The following background reflects the PCRO's findings of fact, which we find are not clearly erroneous, upon which the PCRO relied to direct that Appellant would remain in pretrial confinement.

At approximately 1630 hours on 5 August 2018, a civilian police officer found Appellant unconscious in the driver's seat of a car in the parking lot of a

---

[2] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[3] Appellant was found not guilty of two specifications of failure to go to his prescribed place of duty in violation of Article 86, UCMJ, 10 U.S.C. § 886. One specification of wrongful possession of cocaine in violation of Article 112a, UCMJ, was withdrawn and dismissed prior to arraignment.

shopping mall in Metairie, Louisiana, a suburb of New Orleans. The car's engine was running, and its windows were rolled down. As he attempted to wake Appellant, the police officer observed an open, clear plastic container on the floor of the car near Appellant's feet. The police officer observed that the container held a clear plastic bag with a brown substance inside and a single green pill. After being awoken, Appellant told the police officer that he was in the United States Air Force and was stationed at Keesler Air Force Base, MS. Appellant also informed the police officer that the brown substance in the clear plastic bag was heroin, which he smoked, and that the pill was Xanax,[4] which he took without authorization to "relax his nerves." A crime scene unit arrived and an investigator conducted a field test on the brown substance that produced a "presumptively positive" result for heroin. Appellant was arrested and taken into custody for possession of heroin and alprazolam.

Master Sergeant (MSgt) DD, Appellant's first sergeant, first met Appellant on 11 September 2018 after Appellant returned from a month-long inpatient drug rehabilitation program that resulted from his 5 August 2018 arrest. Less than two weeks later, on 24 September 2018, Appellant failed to report for duty. When MSgt DD eventually saw Appellant later that day, he was "acting paranoid . . . he looked red and flushed, he was sweating profusely, he was hyped up and alternated sitting and standing." She stated Appellant was also "talking fast, mumbling, and acting different than he normally was." MSgt DD convinced Appellant to go the emergency room. As a result of Appellant's conduct, the next day, on 25 September 2018, a military magistrate approved a probable cause search and seizure authorization for Appellant's blood and urine for evidence that Appellant had used drugs. On 26 September 2018, Appellant tested positive for d-methamphetamine and amphetamine, which was confirmed by an analysis of his urine on 4 October 2018 by the Air Force Drug Testing Laboratory.

According to MSgt DD, following Appellant's hospital visit, Appellant continued to "have issues" and his unit provided him a "hospitality room" on base to make it easier for his unit "to keep an eye on him." During this time, Appellant was free to use his off-base apartment with the exception of a three-day period in September 2018. MSgt DD stated there were no issues with Appellant when he was ordered to stay on base during those three days.

On 11 October 2018, Appellant agreed to go to another inpatient drug rehabilitation center in Texas. Following his completion of this two-month long treatment program, Appellant returned to his duty station on 10 December 2018 and was reassigned to work at the base chapel. However, two days later

---

[4] At trial, the military judge took judicial notice of the fact that Xanax is the brand name of the generic drug alprazolam.

Appellant was late for work and chapel personnel requested that Appellant be reassigned.

On several occasions between 14 December 2018 and 2 January 2019, Appellant failed to report to work on time, requiring members of his unit to track him down either on base or off base. On 2 January 2019, MSgt DD went to look for Appellant when he failed to show up for work. She went to Appellant's apartment and noticed his vehicle was wrecked with the air bags deployed. When MSgt DD made contact with Appellant in his apartment, he was still in his pajamas. Appellant did not know what day it was and acted "paranoid and said he believed people were out to get him." He was taken to the mental health clinic, then the emergency room, and he was released after being placed on a 72-hour hold.

At around 0600 hours on 30 January 2019, Officer ML, a civilian police officer, along with a K-9 civilian police officer, responded to a call from a concerned citizen of a "suspicious" male in a car in a parking lot. Appellant met the description and the two police officers began to drive towards Appellant. However, as they approached, Appellant started driving away. The police officers followed Appellant's vehicle and pulled him over after Appellant made an improper turn. The police K-9 alerted for drugs at Appellant's car door. Officer ML also noticed that Appellant was "acting paranoid" and his actions were consistent with someone under the influence of methamphetamine. Officer ML was a patrol sergeant with approximately 15 years of law enforcement experience with the Pascagoula (MS) Police Department. He was a graduate of the Mississippi Law Enforcement Academy and took at least 24 hours of continuing education every year.

Appellant told Officer ML that "people were following him and flashing their headlights at him." A search of Appellant's car revealed no illegal substances, but when Appellant was asked if he had anything illegal on his person, he attempted to flee from law enforcement. Appellant was eventually restrained and searched. The search revealed Appellant was in possession of tissue paper with three balls of foil, containing suspected narcotics, and a straw. The substance was field tested and was positive for crack cocaine. Appellant was arrested and charged with driving under the influence, making an improper turn, drug possession, and resisting arrest.

MSgt DD was notified of Appellant's arrest at approximately 0730 on 30 January 2019. MSgt DD stated that "looking after [Appellant] was very manpower intensive" and she was concerned that Appellant was going to hurt himself or others. By written order of his squadron commander, Appellant was placed into pretrial confinement on 31 January 2019. On that same date, the wing commander appointed the PCRO to conduct a review to determine whether Appellant should remain in confinement.

On 1 February 2019, the PCRO held the review hearing at which Appellant was represented by counsel and was given an opportunity to present evidence. The PCRO considered and relied upon the confinement order; two charge sheets; a civilian police report dated 5 August 2018; two memoranda prepared by noncommissioned officers who witnessed one of the incidents when Appellant failed to report for duty; a memorandum for record by MSgt DD; Appellant's civilian arrest record dated 30 January 2019; drug testing results dated 4 October 2018; a civilian police report dated 30 January 2019; the PCRO appointment letter dated 31 January 2019; and the 48/72 hour Commander's Decision for Continued Pretrial Confinement memorandum. The PCRO also took sworn testimony from MSgt DD and Officer ML.

On 2 February 2019, the PCRO issued his written memorandum, finding by a preponderance of the evidence that (1) Appellant committed an offense triable by court-martial; (2) pretrial confinement was necessary because it was foreseeable that Appellant would engage in serious criminal misconduct to include serious injury to others and offenses which posed a serious threat to the safety of the community; and (3) pretrial confinement was necessary because less severe forms of restraint were inadequate. Based on his findings, the PCRO ordered Appellant to remain in pretrial confinement pending court-martial.

By motion dated 13 February 2019, Appellant's defense counsel requested the military judge release Appellant from pretrial confinement and—should he be convicted—grant him sentence credit on the basis that the PCRO abused his discretion by determining that the requirements of Rule for Courts-Martial (R.C.M.) 305(h)(2)(B) had been established by a preponderance of the evidence. In a written ruling dated 19 February 2019, the military judge denied Defense's motion and found that the PCRO did not abuse his discretion. Appellant's court-martial began less than a week later on 25 February 2019.

## II. DISCUSSION

### A. Pretrial Confinement

On appeal, Appellant asserts the military judge abused his discretion by failing to grant Appellant relief for illegal pretrial confinement. The military judge held that the PCRO did not abuse his discretion by concluding that it was foreseeable that Appellant would engage in serious criminal misconduct and that less severe forms of restraint were inadequate. Appellant contends the PCRO's conclusions were not supported by a preponderance of the evidence. We disagree and find that the military judge did not abuse his discretion and conclude the PCRO did not abuse his discretion in determining further confinement of Appellant was warranted.

**1. Law**

Any military member charged with an offense under the UCMJ may be ordered into confinement, as circumstances may require. Article 10, UCMJ, 10 U.S.C. § 810.

In considering the correctness of a military judge's ruling where an accused requested a decision as to the legality of pretrial confinement, an appellate court limits its review to the facts before the deciding official. *United States v. Gaither*, 45 M.J. 349, 351 (C.A.A.F. 1996). This "requires an appellate court to directly examine the magistrate's decision if the issue is whether the initial decision was proper." *Id*. "[T]o allow a de novo review of the magistrate's decision by either a military judge or a Court of Criminal Appeals would promote confusion as to which facts should be considered and undermine the deference to be given the magistrate's findings." *Id*. at 351–52.

Therefore, in determining the legality of pretrial confinement, the standard of review we use is abuse of discretion. *United States v. Gaither*, 41 M.J. 774, 778 (A.F. Ct. Crim. App. 1995) (citations omitted), *aff'd*, 45 M.J. 349 (C.A.A.F. 1996). An abuse of discretion occurs when the underlying reasoning is clearly untenable and amounts to a denial of justice. *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987) (citation omitted). In order for this court to reverse a decision based on an abuse of discretion, we must have far more than a difference of opinion. *Id*. (citation omitted). Instead, this court must find that the decision or ruling was "arbitrary, fanciful, clearly unreasonable or clearly erroneous." *Id*. (citation and internal quotation marks omitted).

"No person may be ordered into pretrial confinement except for probable cause." R.C.M. 305(d). "Probable cause to order pretrial confinement exists when there is a reasonable belief that: (1) An offense triable by court-martial has been committed; (2) The person confined committed it; and (3) Confinement is required by the circumstances." *Id*.

Once there has been an order for pretrial confinement, the law provides for a review of the pretrial confinement. Within 48 hours of the imposition of pretrial confinement, a "neutral and detached officer" will review "the adequacy of probable cause" to continue pretrial confinement. R.C.M. 305(i)(1). Within 72 hours of the imposition of pretrial confinement or receipt of information that a member of a commander's organization has been placed in pretrial confinement, the member's commander "shall decide whether pretrial confinement will continue" and document the reasons for that decision in a written memorandum. R.C.M 305(h)(2). Within seven days of the imposition of confinement, a neutral and detached officer "shall review the probable cause determination and necessity for continued pretrial confinement." R.C.M. 305(i)(2).

The neutral and detached officer, that is, the PCRO, reviews the memorandum submitted by the commander that initiated the confinement and has broad authority to consider other written matters, as the Military Rules of Evidence "shall not apply to the matters considered." R.C.M. 305(i)(2)(A)(i), (ii). The standard of proof for this review is preponderance of the evidence. R.C.M. 305(i)(2)(A)(iii). Preponderance of the evidence simply means it is "more likely than not." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

"Whether pretrial confinement is required by the circumstances involves two separate determinations: (1) whether there is an adequate basis for ordering the confinement; and (2) whether there is a need for the confinement as opposed to some lesser form of restraint." *United States v. Doane*, 54 M.J. 978, 981 (A.F. Ct. Crim. App. 2001) (citing *United States v. Heard*, 3 M.J. 14, 20–21 (C.M.A. 1977)). "[A]n adequate basis exists for pretrial confinement . . . to avoid foreseeable future serious criminal misconduct of the accused . . . ." *Id*. As it applies here, "serious criminal misconduct" includes "serious injury of others, or other offenses which pose a serious threat to the safety of the community or to the effectiveness, morale, discipline, readiness, or safety of the command." R.C.M. 305(h)(2)(B).

### 2. Analysis

Appellant asserts that the PCRO's decision that it was foreseeable that Appellant would commit an offense posing a serious threat to the safety of the community was based on Appellant's 30 January 2019 civilian arrest for driving under the influence and being in possession of a controlled substance. Appellant claims that the only evidence that he was driving under the influence was the testimony of Officer ML, who testified that Appellant's "actions were consistent with someone influenced by methamphetamine." Without more, Appellant argues this evidence was insufficient to establish by a preponderance that he should remain in pretrial confinement. Appellant further argues that neither R.C.M. 305 nor case law provides that simple possession of illegal drugs would be sufficient to establish that Appellant should be confined. As discussed below, and contrary to Appellant's position, we conclude there was sufficient basis for the PCRO to find (1) Officer ML's testimony credible and supported proof by a preponderance of the evidence, (2) that it was foreseeable Appellant would engage in serious criminal misconduct if not confined, and (3) that lesser means of restraint were inadequate.

The PCRO's review allowed him to independently determine the credibility of the witnesses, including Officer ML, as well as the reliability of the written documents. The PCRO's responsibility was to determine whether to believe Officer ML and to weigh his testimony based on its content, his experience, his demeanor, his memory, whether he had any bias, and whether his testimony was contradicted by other evidence. As noted above, evidence before the PCRO

established that Officer ML was a patrol sergeant with 15 years of law enforcement experience, a graduate of the Mississippi Law Enforcement Academy, and that he took at least 24 hours of continuing education every year. The PCRO could reasonably conclude that Officer ML had the experience and training to sufficiently opine that Appellant's conduct was consistent with someone under the influence of methamphetamine. Courts have allowed factfinders to rely on the experience and training of law enforcement officers to provide opinion testimony. *See United States v. Gallo*, 55 M.J. 418, 422 (C.A.A.F. 2001). Officer ML was in contact with Appellant from the time he attempted to pull Appellant over until the time Appellant attempted to flee from law enforcement and as Appellant resisted arrest. Officer ML observed the paranoid nature of Appellant's behavior, and the accuracy of his testimony was not contradicted at the hearing, nor has it been challenged on appeal. The fact that Appellant was found in possession of one illegal and dangerous drug, crack cocaine, rather than another illegal and dangerous drug, methamphetamine, does not contradict Officer ML's opinion. Consequently, we find that the PCRO was in the best position to determine both the credibility of Officer ML as well as the reliability of other evidence presented at the pretrial confinement review hearing. The PCRO found by a preponderance of the evidence that Appellant was under the influence while operating his vehicle on 30 January 2019, posing a significantly serious threat to the safety of those in the community.

Further, the PCRO concluded by a preponderance of the evidence that Appellant's "decision to be in possession of illegal drugs while in his vehicle posed a significant threat to those that may be on the road around him." Appellant argues that "simple possession of drugs" does not meet the definition of "serious criminal misconduct" as it does not "in and of itself, pose a serious threat to the safety of the community." However, the PCRO's findings were not based solely on "simple possession of drugs," but also on evidence Appellant was driving under the influence of drugs. It is clear that the evidence in front of the PCRO, at the time, pointed to Appellant having a pattern of not only possessing drugs, but using the drugs he possessed and driving. The PCRO did not abuse his discretion in finding by a preponderance of the evidence that drug possession and driving under the influence constituted conduct which made it foreseeable that Appellant would engage in serious criminal misconduct if not confined. The evidence supports the PCRO's findings and conclusion and therefore, there was no abuse of discretion.

Lastly, Appellant attacks the conclusion that lesser means of restraint were inadequate and required Appellant's pretrial confinement. The PCRO found that Appellant had demonstrated that he was unwilling or incapable of meeting even the most basic expectation of showing up for work. He also found that although Appellant was restricted to base for three days in September 2018 without incident, his misconduct continued to escalate, including the failure to

report to duty, driving under the influence, and possessing crack cocaine. The PCRO also found that Appellant demonstrated that treatment facilities had proven to be ineffective in deterring Appellant's illicit behavior. As a result, the PCRO found it foreseeable that even if Appellant was restricted to base, he would fail to adhere to those rules. Appellant argues the facts before the PCRO did not show that lesser means of restraint were inadequate since Appellant was restricted to base for three days without incident. The record supports that the PCRO did consider lesser means of restraint. It is equally clear that Appellant's criminal actions were undeterred and escalating. We find the PCRO's conclusion was not untenable, arbitrary, fanciful, clearly unreasonable, or clearly erroneous, and did not amount to a denial of justice. *See Travers*, 25 M.J. at 62. Appellant's argument is simply a difference of opinion with the PCRO's conclusions, which does not constitute an abuse of discretion. *See id.*

We conclude that the PCRO's findings and conclusions do not amount to an abuse of discretion. Appellant's actions were unpredictable and showed an increasing inability to conform his conduct to that which was expected by his unit, society, and the law. Appellant's actions reasonably led to the conclusions by the PCRO that Appellant did engage in criminal conduct, that it was foreseeable that he would continue to engage in serious criminal misconduct, and that lesser forms of restraint would be inadequate.

In addition, we conclude that the military judge's rulings were also fully supported by the evidence, and he did not abuse his discretion in ruling that the PCRO did not abuse his discretion. Therefore, we hold Appellant's assignment of error to be without merit.

## B. Timeliness of Appellate Review

### 1. Additional Background

Appellant's case was originally docketed with this court on 28 May 2019. Although not raised by Appellant, the delay in rendering this decision after 28 November 2020 is presumptively unreasonable. However, we determine there has been no violation of Appellant's right to due process and a speedy post-trial review and appeal.

### 2. Law

"We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citing *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004); *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003)). In *Moreno*, the United States Court of Appeals for the Armed Forces (CAAF) established a presumption of facially unreasonable delay when the Court of Criminal Appeals does not render a decision within 18 months of docketing. *Id.* at 142. Where there is such a delay, we examine the four factors set

forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533).

However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an Appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted).

### 3. Analysis

This court is affirming the findings and sentence in this case. We find no oppressive incarceration because Appellant is no longer in confinement and his appeal has not resulted in any reduction in his term of confinement. As for anxiety and concern, the CAAF has explained "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140. Appellant has made no claim of such particularized anxiety and we discern none in Appellant's case. Lastly, where the appeal does not result in a rehearing on findings or sentence, as in this case, Appellant's ability to present a defense at a rehearing is not impaired. *Id.* Because we conclude that Appellant suffered no prejudice from the delay, we do not address the first three *Barker* factors.

Where, as here, there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. With regard to appellate review, the delay in issuing the court's opinion exceeded the 18-month *Moreno* standard by less than four months. On the whole, we do not find the delay so egregious as to adversely affect the perceived fairness and integrity of the military justice system. *See id.*

Recognizing our authority under Article 66(c), 10 U.S.C. § 866(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated

in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court